196     APPELLATE COURTS OF ILLINOIS.

G. W. Live Stock Com. Co. v. G. W. Com. Co. et al., 187 Ill. App. 196.

Great Western Live Stock Commission Company, Appellee, v. Great Western Commission Company and Ward Commission Company, Appellants.

Gen. No. 18,870.

1. TRADE-MARKS AND TRADE NAMES, § 26*—*when domestic corporation not entitled to injunction restraining foreign corporation from using similar name.* A corporation organized in this State is not entitled to an injunction to restrain a foreign corporation, having no license to do business in this State, from transacting business in this State under a similar name, where it appears that the foreign corporation is the older corporation and the complainant corporation organized in this State under a similar name for the purpose of obtaining an inequitable advantage of the foreign corporation.

2. TRADE-MARKS AND TRADE NAMES, § 26*—*when relief granted by injunction erroneous.* On bill by an Illinois corporation against a foreign corporation, which has no license to do business in this State, to enjoin it from using a similar name in a similar business, where the foreign corporation filed a cross-bill asking for similar relief, *held* that a decree dismissing the cross-bill and awarding the complainant an injunction restraining the foreign corporation from shipping any live stock in this State under its name or appellation and from receiving any stock shipped into this State under its name or appellation was proper in dismissing the cross-bill, but erroneous in granting complainant the injunction for the reason that the prohibition contained in the injunction order was not proper relief.

3. CORPORATIONS, § 710*—*when foreign corporation not doing business in this State contrary to statute.* A foreign corporation engaged in a live stock commission business in another State by giving an "open order" to deliver to an Illinois commission company, for handling and sale, all stock received at the Chicago Yards consigned to it, *held* not to constitute the Illinois company its agent and not to constitute doing business in this State contrary to statute, where the company did not account to it for any compensation received for such handling or sale.

4. CORPORATIONS, § 25*—*when chargeable with knowledge of incorporators.* Where incorporators of a new corporation were subscribers to a large percentage of the stock and had knowledge of certain things and acted in the incorporation under the influence of that knowledge to effect certain purposes for the unfair advantage

*See Illinois Notes Digest, Vols XI to XV, and Cumulative Quarterly, same topic and section number.

of the corporation when formed, the corporation will be charged
with such knowledge in equity.

McSURELY, J., dissenting.

Appeal from the Circuit Court of Cook County; the Hon. JESSE
A. BALDWIN, Judge, presiding.  Heard in this court at the October
term, 1912.  Reversed with instructions.  Opinion filed May 25,
1914.  Rehearing denied June 8, 1914.

**Statement by the Court.**    This is an appeal from a
decree of the Circuit Court perpetually enjoining, at
the prayer of the Great Western Live Stock Commis-
sion Company, a corporation of Illinois, the Great
Western Commission Company, a corporation of the
State of Nebraska, and the Ward Commission Com-
pany, an Illinois corporation, their agents, etc., from
transacting any business within the State of Illinois
under the name, style or description of "Great Western
Commission Company" or any other similar name,
style or appellation; from shipping any live stock in
the State of Illinois under said name or appellation,
and from receiving any stock shipped into the State
of Illinois under said name or appellation.  The de-
cree also dismissed for want of equity a cross-bill filed
in the cause by the Great Western Commission Com-
pany and a cross-bill filed by the Ward Commission
Company and adjudged the costs of the proceeding
against these two defendant Companies.

The bill of complaint by the Great Western Live
Stock Commission Company sets up that it is a cor-
poration organized under the laws of Illinois and en-
gaged in the live stock commission business in Chi-
cago; that the Great Western Commission Company
is a corporation organized under the laws of Nebraska
and engaged in the live stock commission business at
South Omaha, Nebraska, but is not an Illinois corpora-
tion, and has no license as a foreign corporation to
do business in Illinois, but that it has transacted busi-
ness in Chicago since the organization of the complain-
ant Company; that customers of the complainant do

not know that the complainant and defendant, the Great Western Commission Company, are distinct concerns, and because of the similarity of names have shipped goods to and transacted business with the Great Western Commission Company when intending to do so to and with the complainant; that some such consignments of stock have been delivered to the complainant by the Great Western Commission Company only after great delay, and thus the complainant has suffered great damage, and that other consignments have been made to the Great Western Commission Company on account of the reputation of the complainant for honest and fair dealing and because the complainant was unable to show that the shipper was its customer, the consignments were received and sold by the Great Western Commission Company; that thus the complainant has been hampered and irreparably injured in its business; that the Ward Commission Company is engaged in the live stock commission business in the Union Stock Yards of Chicago and is the agent and representative of the Great Western Commission Company of South Omaha, Nebraska; that the Ward Commission Company and the Great Western Commission Company have placed signs upon their windows under the name of "Great Western Commission Company," and publicly proclaim the said name and the said business in Chicago, Illinois, and have done so for a period of one year past, and threaten to continue to do so in the future; that the Great Western Commission Company and the Ward Commission Company refuse to desist from the use of said name; that the corporate name of the complainant has become a valuable asset and property right of complainant and that the defendant's engaging in the same character of business in the same place under the name of the "Great Western Commission Co." is an infringement on that right and an irreparable injury to the complainant. Wherefore, the complainant prays for

an injunction against the Great Western Commission Company and the Ward Commission Company, "their agents, representatives, attorneys, solicitors and assigns," restraining them from transacting any business within the State of Illinois under "the name or style or designation of Great Western Commission Company, or of any other similar name, style or appellation," and for other relief.

This bill is sworn to by James S. Horn, who states in his affidavit that he is president of the complainant corporation. A demurrer by both the defendants having been overruled, the Great Western Commission Company filed its separate answer and a cross-bill and the Ward Commission Company did the same.

The answer of the Great Western Commission Company admits that it has not so complied with the law of Illinois as to entitle it to a certificate of authority to do business in this State, but denies that it has done or has undertaken to do business in, or is now engaged in the transaction of business in, the State of Illinois under its name of Great Western Commission Company. It admits that the complainant has customers and patrons throughout the Western country who are without information and knowledge that the complainant and the Great Western Commission Company are separate and distinct concerns, but asserts that the said customers have been also for many years customers of the Great Western Commission Company, and that any confusion has been caused by the complainant unfairly and fraudulently going into the Western country seeking business and using a name similar to that of the Great Western Commission Company. It denies that any consignments of live stock intended for the complainant came into the hands of the Great Western Commission Company, but that instances of confusion came from the similarity of names and from shipments intended for the Great Western Commission Company going to complainant, and that all shipments of stock received by the Great Western Commis-

200    Appellate Courts of Illinois.

G. W. Live Stock Com. Co. v. G. W. Com. Co. et al., 187 Ill. App. 196.

sion Company and sold by it were from its own patrons and customers. It also denies that the Ward Commission Company is the agent and representative of the Great Western Commission Company, and denies the allegations of the bill about "signs" and "proclamations" by which the Ward Commission Company advertises the business of the Great Western Commission Company in Chicago, and to quote:

"Further answering denies that the name Great Western Live Stock Commission Company, under which complainant is organized, has become a valuable asset and property right of complainant through any efforts of complainant," but alleges "that any benefit or value said name has, has inured to the said complainant by virtue of its assuming a name similar to the name Great Western Commission Company, and acquired thereby the benefit of the long use of the name Great Western Commission Company used by this defendant throughout the Western country, on account of the fact that the great bulk of the live stock business originates southwest and west of Illinois, and this defendant states that the said complainant created no business whatever except that which it obtained by taking advantage of the long use of the name of this defendant."

The cross-bill of the Great Western Commission Company alleges that it is a corporation organized under the laws of the State of Nebraska on September 30, 1903; that it was organized for the purpose of buying and selling live stock upon commission, and since September, 1903, has been doing business from South Omaha, Nebraska, and has built up a very large and profitable business among the live stock shippers of the West, and that since said time its name has become a valuable asset at all the live stock markets of the United States, and that in April, 1910, it made arrangements with the Ward Commission Company of Chicago to sell consignments of stock for it at the Union Stock Yards, Chicago, where stock had been consigned to it, and the customers requested the ship-

ments should be transferred to the Chicago market; and that, to quote again:

"Said complainant for the purpose of obtaining the business of your orator, the Great Western Commission Company, by fraud and deception did, with the intent of deceiving the public and the customers of the Great Western Commission Company, your orator, on the 16th day of January, 1911, at Chicago, Illinois, form a corporation and secure a charter under the laws of the State of Illinois, in the name of Great Western Live Stock Commission Company, this name being used by said incorporators and the complainant herein with the intent and purpose of deceiving the public and particularly the customers of the Great Western Commission Company, your orator, for the purpose of obtaining business under false pretenses by reason of similarity of the name, which business would be sent to them by the old customers of the Great Western Commission Company, your orator, under the impression and belief that they were sending their stock for sale on commission to the Great Western Commission Company, with whom they had been dealing for a number of years."

Further allegations of the cross-bill purport to set forth in detail evidentiary matters tending to show the truth of the paragraph of the bill above quoted, and assert that in December, 1910, the cross-complainant made application for an independent charter as an Illinois corporation. The application of the complainant which resulted in securing its "charter" had, however, already been made, and by reason only of the similarity of name the application of the cross-complainant was rejected. They also assert that in January, 1911, the cross-complainant made an application for a license to do business in Illinois as a foreign corporation, which was rejected for the same reason; also that while previous to said applications the cross-complainant had been turning over all consignments of live stock consigned to the Chicago market to the Ward Commission Company of Chicago, all said business was handled by the Ward Commission Company

on a regular commission basis, and the cross-complainant received no part of said commissions or any pecuniary benefit from said sales. Further, that by means of the unfair actions and advertisements of the complainant, the Great Western Live Stock Commission Company, originating "in a conspiracy formed by the incorporators of the complainant in the first instance for the express purpose of obtaining business which rightfully belonged to your orator by deceitful and unfair means," the cross-complainant has been much injured, and will continue to be, and that "years of valuable time and a large amount of money expended" by the cross-complainant "will be lost and will redound to the benefit of the complainant.

The principal prayer of the cross-bill is that the Great Western Live Stock Commission Company and its agents may be enjoined from transacting live stock commission business within the State of Illinois, and throughout the cattle raising and shipping country of the West under the name of the Great Western Live Stock Commission Company, or of any other similar name.

The Ward Commission Company in its answer admits that on January 16, 1911, the complainant completed its organization as a corporation under the laws of Illinois, under the name of the Great Western Live Stock Commission Company; that it, the Ward Commission Company, has been for many years engaged in the live stock commission business at the Union Stock Yards in Chicago, and that there is a similarity between the names of the complainant and the other defendant, and denies every other allegation of the bill. Its cross-bill alleges that it has built up during many years a large business among live stock shippers of the West, and also as "the representative and agent of live stock commission firms at other markets of the United States, for whose customers they sell stock upon the market at the Union Stock Yards, Chicago, on a commission basis, receiving all the compen-

sation therefor; that they do this selling for the customers of other commission firms doing business at other markets, who are not members of the Chicago Live Stock Exchange, and cannot under its rules handle the stock themselves; that the said firms do not receive any of the compensation for making the sales or for the business which is sent to the Ward Commission Company through their influence, and receive no benefit therefrom except that of "placing their customers in good hands," who will treat the customers fairly and be friendly with the diverting commission firm, and "not seek to secure the business of the said customers except through them."

The further allegations of this cross-bill are that by virtue of an arrangement like this the Ward Commission Company has since April 29, 1910, received a number of consignments diverted to it by the Great Western Commission Company through its shippers and customers, and that since the organization of the complainant, the Great Western Live Stock Commission Company, that Company, for the purpose of unfair competition, has so advertised its business as to deceive shippers into the belief that it was the same concern as the Great Western Commission Company, and has received in consequence many consignments which should and would have been received by the Ward Commission Company through the recommendation and influence of the Great Western Commission Company, and in consequence of the unfair dealing of the Great Western Live Stock Commission Company, complainant and cross-defendant, it, the cross-complainant, is being irreparably injured. Therefore, it asks the same injunction and other relief against the cross-defendant asked by the Great Western Commission Company.

The answer of the Great Western Live Stock Commission Company to the cross-bill of the Great Western Commission Company denies that the Great Western Live Stock Commission Company ever prac-

204    APPELLATE COURTS OF ILLINOIS.

G. W. Live Stock Com. Co. v. G. W. Com. Co. et al., 187 Ill. App. 196.

ticed any fraud or deception upon the public or upon the customers of the Great Western Commission Company for the purpose of obtaining its business or for any other purpose; admits the confusion consequent upon the similarity of names; asserts that the relations and arrangements between the Great Western Commission Company and the Ward Commission Company about profits are immaterial and denies that it ever received any consignment of live stock designed for the Great Western Commission Company, but that the reverse is true. The emphasis of the answer is placed upon the allegation that the confusion between the Companies is due to the—

"Open, flagrant and notorious violation of the laws of this State by the said cross-complainant and because of its defiance of the orders of the Secretary of State of this State, but that the name of the cross-defendant was given to it by the Secretary of State of Illinois in conformity with the statutes of the State of Illinois, and that it has in all things at all times conformed itself to the laws of the State of Illinois for the sole purpose of engaging in legitimate business in the State of Illinois, while the said cross-complainant has no lawful right or authority to do business in this State under its corporate charter."

No answer of the Great Western Live Stock Commission Company to the cross-bill of the Ward Commission Company so far as the transcript of the record (which is certified to be complete) shows, was ever filed, although the Ward Commission Company seems to have filed a replication to a supposititious one.

Replications were also duly filed by the various parties to all the answers actually made in the cause and an order was entered which the transcript of record shows to be that the cause should be referred to a master in chancery to take evidence upon the issues therein upon *the bill and cross-bill,* and report his conclusions of law and fact, but which the abstract speaks of as referring to bill and cross-bills. The master reported findings of fact and law, which are referred to

in the opinion following, with the conclusion that "the cross-complainant Great Western Commission Company, by reason of being unlicensed to do business in Illinois, is not entitled to the relief prayed for in its cross-bill," but that the injunction prayed for by the Great Western Live Stock Commission Company should be granted. It made no reference to the cross-bill of the Ward Commission Company.

Exceptions were taken to the master's report in many particulars by the Great Western Commission Company and the Ward Commission Company, and were argued before the chancellor. A decree was entered by him July 8, 1912, which made no express disposition of the exceptions, but made findings of fact and law in favor of the complainant and cross-defendant, the Great Western Live Stock Commission Company, and ordered the dismissal of the cross-bills and the injunction and cost judgment as set forth at the beginning of this statement.

From this decree an appeal was taken to this court by both the Great Western Commission Company and the Ward Commission Company, and in addition to general assignments of error, in that the court enjoined the defendants as stated and dismissed the cross-bills, they allege that the court erred in not finding that "the cross-complainant, Great Western Commission Company, had acquired a property right to the use of its name, and that the use of the name Great Western Live Stock Commission Company by the complainant was a deprivation of that right and intended to get fraudulently a share of the business of the said cross-complainant;" that the defendant Great Western Commission Company was transacting business within the State of Illinois in violation of the Foreign Corporation Act of this State and in contravention of the public policy of the State of Illinois, and in not holding "that the defendant Great Western Commission Company was doing an interstate commerce business."

P. A. Wells and George V. McIntyre, for appellants.

Charles J. Trainor, for appellee.

Mr. Justice Brown delivered the opinion of the court.

This is a case in which two corporations in the same business and with very similar names find, naturally, that confusion has resulted, which each party insistently alleges is to its peculiar detriment. Concerning this confusion and its results, conflicting evidence is to be found in the record. We do not think it necessary to say more of this phase of the matter than that we are satisfied that such confusion exists and is detrimental to the business interests of each party.

But the theories which underlie the remedy which each party is seeking against the other cannot be so easily disposed of, nor can rights which each party claims as legally belonging to it be reconciled.

On the one hand, the older corporation, formed many years ago, under the laws of another State, and with its principal place of business in another State, maintains that with the purpose of absorbing its business not only unjustly and unfairly, but by actual deception and fraud, persons possessing knowledge of the good-will and enviable reputation which it had acquired, conspired to appropriate them for their personal pecuniary advantage,—a manifestly inequitable proceeding, if no worse, and one to which no court of equity should, if escape is possible, lend its aid.

But while suffering from the partially successful attempt which the unfair competitors were making through the organization under the laws of this State of a corporation with a very similar name to do the same business—business originating in identical territories and finished in territories that are certain to overlap—this older corporation is confronted with the

strenuous contention of its newly organized competitor that it should be restrained by the power of the courts from so acting as to minimize its loss and retain some of the business intended for it, but which, in default of such action, would go to its competitor. The ground of this demand is that the junior corporation alone can be recognized in this State as having any rights as to business intended for either corporation, inasmuch as it has a license to do business within the State, while its competitor has none and is violating the law in asserting one.

The situation suggests to us the speech of Hamlet to the gravedigger: "Here's fine revolution an' we had the trick to see it."

The master and the chancellor did "see" the matter in this light; nor is the argument for the position that they have taken without force and plausibility.

The majority of this court, however, are constrained to a different conclusion after a full consideration of the facts which they think the evidence shows, and the application to those facts of the rules of law which they believe relevant.

The evidence to our minds establishes not only the fact found by the master, that the subscribers for eighty per cent. of the stock of the Great Western Live Stock Commission Company on its organization, who were also its promoters and incorporators, knew of the existence of the Great Western Commission Company as an incorporated Company, but also negatives and establishes the reverse of the findings of the decree, that "the incorporators of the complainant Company in no manner intended to use the name or to derive any benefit from the advertising of the defendant Great Western Commission Company," and that "their conduct was entirely free from any purpose to obtain any undue advantage by reason of the name or good-will of the said Great Western Commission Company."

208    APPELLATE COURTS OF ILLINOIS.

G. W. Live Stock Com. Co. v. G. W. Com. Co. et al., 187 Ill. App. 196.

To go over the evidence, oral and documentary, from which we draw what we deem these legitimate inferences, would be useless. They are conclusions reached after a study of the record.

To the further finding of the decree, that "the incorporators acted strictly within their legal right in making application for the name of the Great Western Live Stock Commission Company," we accede; but "legal rights" are not always identical with "clean hands," required in a court of equity when its extraordinary powers are invoked to coerce and restrain a competitor. We think the complainant in this case did have a legal right to secure from the State of Illinois incorporation under the name which its incorporators selected, as we believe, for the purpose of securing an unfair advantage over a foreign corporation with a very similar name; and for that reason we cannot hold that to grant the prayer of the cross-bill of the Great Western Commission Company and of the cross-bill of the Ward Commission Company would have been justifiable. The portion of the decree which dismissed the cross-bills we think correct.

But this was not the main effect of the decree. By a sweeping injunction it restrained the Great Western Commission Company from transacting any business whatever under its own name, and also restrained the Ward Commission Company from transacting any business in the State of Illinois under the name of its alleged principal, the Great Western Commission Company, and enjoined both companies, the one incorporated in Illinois as well as the Nebraska one, "from shipping any live stock in the State of Illinois under said name or appellation, *and from receiving any stock shipped into the State of Illinois under said name or appellation.*"

It is in the words of the injunction order which we have italicized that its chief force lies. If the prohibition contained in them is not a proper relief for the

complainant to be given, its bill might as well, it was in argument conceded by the appellee, be dismissed.

We do not think it is proper relief. *First.* We do not think that the complainant corporation has "clean hands" with which to pray for it or receive it. Not only do we disagree with the finding of the court below that the conduct of the incorporators was free from the purposes of obtaining an inequitable advantage of the Great Western Commission Company, but we disagree also with the conclusion of law formulated by the master that "the Great Western Live Stock Commission Company is not chargeable with the knowledge possessed by certain of its incorporations nor liable for the actions of said incorporators prior to its actual incorporation."

The theory of a corporation as an entity distinct from any of its corporators or all of them together has been carried far, but in our opinion it stops short of such an unlimited statement of it as this.

We think in this case, where, as we believe, the persons who subscribed for eighty per cent. if not for all of the stock of the new corporation, and who became at once its officers and managers, knew certain things and acted in the incorporation under the influence of that knowledge to effect certain purposes for the unfair advantage of the corporation when formed, that the corporation is affected with that knowledge and must be debited with those purposes. Equity in such a case will disregard forms and ignore to some extent and *pro hac vice* the corporate entity by attributing to the corporation any disability in suing that the promoters would be under. It would be a halting jurisprudence which could not do this.

The relief in this case given to the complainant corporation was recommended by the master and given by the court solely on the ground that any business transacted by the Great Western Commission Company in Illinois was so transacted in violation of the laws of this State because it had no charter or license

210     APPELLATE COURTS OF ILLINOIS.

G. W. Live Stock Com. Co. v. G. W. Com. Co. et al., 187 Ill. App. 196.

from the State. But to justify the right of the complainant to an injunction on that ground it seems plain to us it must be acting in good faith, with clean hands, and not in pursuance of a purpose and design to use the good-will and prestige of the foreign and older corporation for its own advantage. The chancellor finds by his decree that the complainant was thus acting in entire good faith. The report of the master leaves it open whether he was of this opinion. We are not, and think that on this account the bill of the complainant, equally with the cross-bills, should have been dismissed even if the conclusions of the master and chancellor are correct that the Great Western Commission Company was, through the Ward Commission Company, doing business in Illinois, and that said business was not interstate commerce, which the State of Illinois could not forbid nor render unlawful.

We are not, however, in accord with either of these conclusions. In other words, we do not think the evidence shows that the business done by the Ward Commission Company (an Illinois corporation) under the "open order" system described in the testimony, was business done by the Great Western Commission Company. But if it is to be considered the business of the Great Western Commission Company, then, so far as that Company is concerned, it is interstate commerce.

There are findings in the master's report and in the decree, which we may concede there was evidence sufficient to justify, that advertisement to some extent of the Great Western Commission Company, and of its being able to deal with shipments of live stock made to Chicago, was made after the organization of the complainant Company; but it was not this advertising which was enjoined, nor was this advertisement "doing business" in Illinois.

The course of events which the master and the court found constituted doing business by the Great Western Commission Company in Illinois was this: Although the Great Western Commission Company was

a Nebraska corporation and had its principal office in South Omaha in that State, stock was sometimes consigned to it at Chicago by its clients in the Western cattle raising country, in order that it might be sold in Chicago, and sometimes stock consigned to it at South Omaha was by it diverted and sent on to Chicago for sale upon the market here, if it could not sell it satisfactorily to itself or to the owner in South Omaha. Such a course of dealing, it appears, is a concomitant of the cattle raising and selling business, because of variations and changes, more or less sudden, in the market prices at different points. But something must be added to this to show that the Great Western Commission Company did business in Illinois. It must be also shown that when the stock arrived in Chicago it was handled and sold by the Great Western Commission Company. This the master and chancellor found happened, because an ''open order'' had been given by the Great Western Commission Company to deliver to the Ward Commission Company, an Illinois corporation, for handling and sale, all stock received at the Chicago Yards consigned to it. This, in their view, made the Ward Commission Company the agent of the Great Western Commission Company, and its acts in relation to said stock the acts of the Great Western Commission Company. We do not agree with this. The Ward Commission Company did not account to the Great Western Commission Company for any compensation received by it for such handling or sale. That went directly to the Ward Commission Company and was retained by it. So far as these shipments go, the evidence shows that the only compensation the Great Western Commission Company gets is the moral one of feeling that the interests of its customers which it cannot satisfactorily further in Omaha are well taken care of in Chicago. This does not make an agency. Nor in our opinion is it made an agency, nor is the connection of the Great Western Commission Com-

pany with this course of things made the doing of business by it in Illinois because, in return for the favor shown by it to the Ward Commission Company, that Company gave a similar "open order" to the Great Western Commission Company in relation to shipments to the Ward Commission Company consigned or directed to Omaha. This was a mere interchange of orders, analogous in principle to that which might take place between lawyers of different States in regard to local business they could not attend to, or to reciprocal recommendations of hotels in different cities, or interchange of services between newspapers in different cities, or a thousand other examples of reciprocal recommendations or service. We do not think it merits the importance evidently attached to it in the theory of the appellee.

The considerations we have indicated lead us to the conclusion that the Great Western Commission Company is not, in the transactions that we have detailed, doing business in Illinois, and for that reason, irrespective of the one already given and that which will follow, the injunction which prevents the Illinois corporation, the Ward Commission Company, "from receiving any stock shipped into the State of Illinois under the name" of the Great Western Commission Company, is necessarily erroneous and oppressive.

But even if we should be held wrong in this, we cannot see why, if this course of dealing constitutes the doing of business by the Great Western Commission Company in Illinois, it is not "interstate commerce" that it is transacting. We shall not dwell on this phase of the case, so conclusive seem the others to our minds. But it is beyond doubt that if it be an interstate commerce that the Great Western Commission Company is doing, it cannot be prevented or interfered with under the pretext of enforcing the law of Illinois. *Lehigh Portland Cement Company v. McLean,* 245 Ill. 326.

It is maintained by the appellee that the case of *Hopkins v. United States,* 171 U. S. 578, is conclusive against the position that the business involved is an interstate commerce. We do not so consider it. All that that case decides is that selling on commission live stock received from one ·State at stock yards in another State is not that kind of interstate commerce which is affected by the· Federal Antitrust Act. The case has nothing to do with an interchange of orders between brokers or commission men of different States of business coming primarily to each. Such an interchange frequently takes place in connection with other kinds of "stock," as well as with live stock. We do not think it makes the interchange brokers transacters of business in the State foreign to them; but if it does, it is in our opinion an interstate business they do.

The decree of the Circuit Court is reversed and the cause remanded to that court, with instructions to dismiss both the bill of the Great Western Live Stock Commission Company and the cross-bills of the Great Western Commission Company and of the Ward Commission Company for want of equity.

*Reversed with instructions.*

MR. JUSTICE McSURELY, dissenting.