THE LEHIGH PORTLAND CEMENT COMPANY, Appellee, *vs.* JAMES G. McLEAN *et al.* Appellants.

*Opinion filed June 29, 1910.*

1. CORPORATIONS—*if a foreign corporation transacts business without complying with law its contracts are void.* If a foreign corporation for profit transacts its business in Illinois without complying with the requirements of the act of 1905 to regulate the admission of foreign corporations for profit to do business in Illinois its contracts connected with the business so transacted are void, provided such corporation is one which is amenable to the provisions of the act.

2. SAME—*State has no power to regulate foreign corporations engaged in inter-State commerce.* The power of a State to impose conditions upon foreign corporations for the exercise of their corporate franchises and privileges is subject to the restriction contained in section 8 of article 1 of the constitution of the United States, which grants to Congress the power to regulate commerce among the several States.

3. SAME—*power of Congress to regulate commerce is exclusive.* No State, except in the exercise of police power for the security of the lives, health and comfort of persons and the protection of property, can make any law or regulation which will affect the free and unrestrained intercourse and trade between the

States as Congress has left it, or which will impose any discriminating burden or tax upon the citizens or products of other States coming or brought within its jurisdiction.

4. SAME—*right of unrestrained trade extends to corporations.* The right of free and unrestrained intercourse and trade is not confined to natural persons but extends to corporations.

5. SAME—*Illinois statute concerning foreign corporations does not apply to corporations engaged in inter-State commerce.* The act of 1905, to regulate foreign corporations doing business in Illinois, by its terms applies only to such corporations as are "amenable to the provisions of this act," and does not apply to foreign corporations engaged in the business of inter-State commerce, and such corporations are therefore not precluded from using the courts of Illinois because they have not complied with such act.

6. SAME—*when foreign corporation is engaged in inter-State commerce.* A foreign corporation engaged in manufacture in the foreign State and selling and delivering its product to merchants in Illinois through its salesmen without having any office or place of business in Illinois is engaged in inter-State commerce, and may sue in the courts of Illinois for the price of merchandise so sold and delivered though it has not complied with the act regulating foreign corporations.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the County Court of Richland county; the Hon. J. A. MACNEIL, Judge, presiding.

H. G. MORRIS, for appellants.

JOHN LYNCH, and T. A. FRITCHEY, for appellee.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of the court:

The appellee sued the appellants in assumpsit. To the declaration containing a common count for goods sold and delivered, a plea was filed alleging that the appellee is a Pennsylvania corporation engaged in manufacturing cement in Pennsylvania and in selling it in Illinois; that the merchandise for which the suit was brought was sold to

the appellants in 1907 at Olney, Illinois, by the appellee through its agent, to be there delivered by appellee and paid for by appellants, and was there delivered to appellants; that at the time of such sale and until the commencement of the suit the appellee was engaged in selling in Illinois its products to the merchants of Illinois through numerous salesmen, who were authorized by the appellee to sell its products, open accounts with merchants purchasing them and collect money from such merchants; that at the time of such sale and the delivery of the goods, and when suit was brought, the appellee had not designated any person as its agent or representative in this State upon whom service of legal process might be had, did not maintain a public office or place of business in this State, had not filed in the office of the Secretary of State a copy of its charter, articles or certificate of incorporation, nor had the Secretary of State issued to appellee a certificate that it had complied with the laws of this State, by reason whereof the appellee could not bring and maintain its suit. A demurrer was sustained to this plea, and the appellants electing to stand by it, judgment was entered against them for $569.32. The Appellate Court affirmed the judgment and granted a certificate of importance and appeal to this court.

The plea is based upon the act of May 18, 1905, "to regulate the admission of foreign corporations for profit to do business in the State of Illinois." According to its averments the appellee was engaged in the transaction of business in this State without having complied with the provisions of this act. The contract upon which the suit was brought, being made in violation of an express statutory provision, was therefore void if the act applies to the business of appellee transacted in this State. *Cincinnati Mutual Health Assurance Co.* v. *Rosenthal,* 55 Ill. 85; *Penn* v. *Bornman,* 102 id. 523; *United Lead Co.* v. *Reedy Elevator Manf. Co.* 222 id. 199.

It is a familiar rule that the legislature has power to impose such conditions as it may choose upon foreign corporations for the exercise of powers and privileges in this State, and such conditions must be complied with. This power of the legislature is, however, subject to the restriction contained in section 8 of article 1 of the constitution of the United States, which grants to Congress the power to regulate commerce among the several States. The authority of Congress in this regard is exclusive, and no State, except in the exercise of the police power for the security of the lives, health and comfort of persons and the protection of property, can make any law or regulation which will affect the free and unrestrained intercourse and trade between the States as Congress has left it, or which will impose any discriminating burden or tax upon the citizens or products of other States coming or brought within its jurisdiction. The cases are too numerous for exhaustive citation and the doctrine too well established to require it. *Robbins* v. *Shelby Taxing District,* 120 U. S. 489; *Asher* v. *Texas,* 128 id. 129; *Lyng* v. *Michigan,* 135 id. 161; *Brennan* v. *Titusville,* 153 id. 289; *Stockard* v. *Morgan,* 185 id. 27; *Norfolk and Western Railway Co.* v. *Sims,* 191 id. 441; *Caldwell* v. *North Carolina,* 187 id. 622.

This right of free and unrestrained intercourse is not confined to natural persons but extends also to corporations. In *Paul* v. *Virginia,* 8 Wall. 168, in discussing this clause of the constitution it is said (p. 182): "It is undoubtedly true, as stated by counsel, that the power conferred upon Congress to regulate commerce includes as well commerce carried on by corporations as commerce carried on by individuals. At the time of the formation of the constitution a large part of the commerce of the world was carried on by corporations. * * * This state of facts forbids the supposition that it was intended in the grant of power to Congress to exclude from its control the commerce of corporations."

"It is clear the statute cannot be construed to impose upon a foreign corporation limitations of its right to make contracts in the State for carrying on commerce between the States, for that would make the act an invasion of the exclusive right of Congress to regulate commerce among the several States." *Cooper Manf. Co.* v. *Ferguson,* 113 U. S. 727.

In *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196, the State of Pennsylvania attempted to collect a tax from the ferry company, which was a New Jersey corporation operating a steamboat ferry having its property and business at Camden, in that State, except that it received and landed passengers and freight at a dock which it leased in Philadelphia, and it did no other business in Pennsylvania. The tax was based upon dividends paid, and the law under which it was levied applied to domestic as well as foreign corporations. It was held that the tax was a tax upon the commerce between the two States, and that the corporation was entitled to the same protection against its exaction as an individual engaged in inter-State commerce.

"The only limitation upon this power of the State to exclude a foreign corporation from doing business within its limits or hiring offices for that purpose, or to exact conditions for allowing the corporation to do business or hire offices there, arises where the corporation is in the employ of the Federal government, or where its business is strictly commerce, inter-State or foreign. The control of such commerce, being in the Federal government, is not to be restricted by State authority." *Pembina Mining Co.* v. *Pennsylvania,* 125 U. S. 181; *Pensacola Telegraph Co.* v. *Western Union Telegraph Co.* 96 id. 1; *Horn Silver Mining Co.* v. *New York,* 143 id. 305.

An act of the legislature of Kentucky prohibited the agent of every express company not incorporated by the laws of Kentucky from carrying on the business of trans-

portation in the State without first obtaining a license from the auditor of public accounts and filing in his office a copy of the charter of the company, and a statement showing, among other things, its assets and liabilities and that it is possessed of an actual capital of $150,000 in cash or safe investments. The act was held invalid, being a regulation of inter-State commerce. (*Crutcher* v. *Kentucky,* 141 U. S. 47.) The court said: "If a partnership firm of individuals should undertake to carry on the business of inter-State commerce between Kentucky and other States, it would not be within the province of the State legislature to exact conditions on which they should carry on their business nor to require them to take out a license therefor. To carry on inter-State commerce is not a franchise or privilege granted by the State. It is a right which every citizen of the United States is entitled to exercise under the constitution and laws of the United States; and the accession of mere corporate facilities, as a matter of convenience in carrying on their business, cannot have the effect of depriving them of such right, unless Congress should see fit to interpose some contrary regulation on the subject."

In the late case of *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, the Supreme Court of the United States holds that the exaction from a foreign telegraph company of a charter fee of a given per cent of its authorized capital as a condition of continuing to do local business in the State of Kansas is invalid under the commerce and due processes of law clauses of the Federal constitution, as necessarily amounting to a burden and a tax on the company's inter-State business and on its property located outside of the State. The same rule was announced in *Ludwig* v. *Western Union Telegraph Co.* 216 U. S. 146, where a statute of the State of Arkansas somewhat similar to the Kansas statute was under consideration. The Kansas statute was again before the court in the case of *Pull-*

*man Co.* v. *Kansas,* 216 U. S. 56, and the rule announced in the *Western Union Telegraph Co. cases* was applied to a foreign sleeping car company. In each of the cases above cited the Supreme Court held that the corporations were engaged in inter-State commerce, and that the State statutes imposing conditions upon foreign corporations before such corporations could be permitted to transact business in the State could not be applied to such foreign corporations.

The latest expression of the United States Supreme Court, so far as we are advised, is found in the case of *International Text Book Co.* v. *Pigg,* 217 U. S. 91. The International Text Book Company is a Pennsylvania corporation and conducts a correspondence school from its principal office at Scranton, Pa. Its officers and instructors are located at Scranton, where instruction papers are published and forwarded from time to time to students residing in different parts of the United States. In the conduct of its business local or traveling agents are employed, whose duties are to procure and forward to the company at Scranton, on blanks furnished by it, applications for scholarships in its correspondence school and to collect and forward to the company deferred payments on scholarships. The solicitor general in Kansas maintains his office in that State at his own expense, being paid a salary by the company and a commission on the number of applications obtained and collections made. Pigg subscribed for a scholarship at Topeka, Kansas, and having failed to pay an installment due the company under the contract, suit was brought by the International Text Book Company against him for the unpaid installment. The Kansas court held that by reason of the company's failure to comply with certain provisions of the statute of Kansas it was not entitled to maintain an action in the courts of Kansas. This decision was reversed by the Supreme Court of the United States and the following propositions were decided: (1) That under the facts appearing in the record the Inernational Text Book Com-

pany was doing business in the State of Kansas within the meaning of the Kansas statute; (2) that the business of the International Text Book Company was in its essential characteristics commerce among the States within the meaning of the constitution of the United States; (3) that the requirement of the statement to be filed with the Secretary of State by the Kansas statute imposed a burden on the right of the company to do inter-State business, and was therefore unconstitutional; (4) that the clause in the Kansas statute prohibiting foreign corporations which had not complied with the State statute from maintaining suits in the State courts was so dependent upon and connected with that part of the act imposing conditions as to be meaningless when standing alone, and that the prohibition against the right to maintain suits in the State courts was likewise unconstitutional.

Section 6 of chapter 32 of Hurd's Revised Statutes of 1909, which is relied upon to sustain appellants' plea, by its terms only applies to such foreign corporations as are "amenable to the provisions of this act." Under the rules announced in the decisions above referred to, this section cannot have any application to foreign corporations which are engaged in inter-State commerce. Such corporations are consequently, by the terms of the act itself, excepted from the penalties provided in said section for a failure to comply therewith. It would be manifestly illogical to hold that a foreign corporation engaged in inter-State commerce was exempt from all those provisions of the act imposing conditions upon the right to do business in the State, yet such corporation might nevertheless be penalized by denying it access to our State courts. A penalty ought not to be imposed upon foreign corporations for a failure to comply with a statute that has no application to them.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*