Marketlines, Inc., a New York Corporation, Plaintiff-Appellant, v. William H. Chamberlain, Secretary of State of the State of Illinois, Defendant-Appellee.

Gen. No. 50,142.

First District, First Division.

October 4, 1965.

L. Louis Karton, of Chicago, for appellant.

William G. Clark, Attorney General, of Chicago (Richard A. Michael, A. Zola Groves, Robert Scharf-man, Edward A. Berman, and John J. O'Toole, Assistant Attorneys General, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

This is an administrative review action. Plaintiff appeals from an affirmance by the Circuit Court of a decision of the Secretary of State, which prohibits plaintiff "from acting as an investment adviser in the State of Illinois except in compliance with The Illinois Securities Law of 1953." Ill Rev Stats 1963, ch 121½, § 137.1 et seq.

Plaintiff, Marketlines, Inc., is a New York corporation engaged in the preparation and sale of a weekly investment letter, which gives advice on the prospect of what it thinks a stock will do, based on plaintiff's interpretation of technical factors. It has no office or physical representation in Illinois. Its president, David S. Romanoff, filed an application in Illinois for registration as an investment adviser. He did not get a passing grade on the examination, and no license was issued, whereupon he withdrew his application.

Plaintiff receives subscriptions through the mail at its New York office, and sends its market letter to subscribers through the mail. It has subscribers all over the country and abroad. The market letter shows on its face that it has been registered with the U. S. Securities and Exchange Commission. Plaintiff has approximately 30 to 40 subscribers in Illinois, which were obtained through the mail as a result of direct mail advertising and four New York paper advertisements.

On appeal, plaintiff contends: (1) The Illinois Securities Law provisions concerning an "investment adviser" do not apply to a foreign corporation which publishes a stock market advisory letter and is engaged solely in interstate commerce; (2) The judgment is contrary to the manifest weight of the evidence and the law; (3) Plaintiff has been denied the equal protection of the law in violation of the 5th and 14th Amendments to the Constitution of the United States of America.

The sections of the Illinois Securities Law of 1953 with which we are concerned are as follows:

Section 2–11 (¶ 137.2–11) :

> " 'Investment adviser' means any person who for compensation engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities, or who for compensation and as part of a regular advisory business issues or promulgates analyses or reports concerning securities; but 'investment adviser' shall not include:
>
> . . .
>
> (4) any publisher or regular employee of such publisher of a bona fide newspaper, news maga-

276

zine, or business or financial publication of regular and established paid circulation;

. . . ."

Section 8 D (¶ 137.8 D):

"An application for registration as an investment adviser, duly verified by oath, shall be filed in the office of the Secretary of State, in such form as the Secretary of State may by rule or regulation prescribe, setting forth or accompanied by:

(1) the name and form of organization under which the investment adviser engages or intends to engage in business; the name of the State or other sovereign power under which such investment adviser is organized; the location of his or its principal business office and branch offices, if any; the names and addresses of his or its partners, officers, directors, and persons performing similar functions or, if such an investment adviser be an individual, of such individual; and the number of his or its employees;

. . .

(7) a statement as to whether such investment adviser is engaged or is to engage primarily in the business of rendering investment supervisory services; and

. . . ."

Initially, we consider plaintiff's principal contention that "it is elementary that the power of the State of Illinois to regulate a business does not extend to a foreign corporation whose business in Illinois is solely interstate commerce." Cases cited in support of this contention are Air Conditioning Training Corp. v. Majer, 324 Ill App 387, 58 NE2d 294 (1944); Saletko v. Willys Motors, Inc., 36 Ill App2d 7, 183 NE2d 569

(1962); Grobark v. Addo Machine Co., Inc., 16 Ill2d 426, 158 NE2d 73 (1959); International Textbook Co. v. Pigg, 217 US 91 (1910); Lehigh Cement Co. v. McLean, 245 Ill 326, 92 NE 248 (1910).

In Air Conditioning Training Corp., the court held that the right to sue of a foreign corporation engaged in interstate commerce was not limited by the Illinois Corporation Act. In Saletko, it was held that a foreign corporation had not transacted any business "in Illinois sufficient to subject defendant to in personam jurisdiction of the courts of this state." In Grobark, our Supreme Court determined that the defendant foreign corporation "did not have 'minimum contacts' with the State of Illinois" sufficient to submit to the jurisdiction of the Illinois courts. In International Textbook Co., it was held that because the business of the defendant foreign corporation was interstate in its nature, the State of Kansas had no power to require a foreign corporation to obtain a license to do business in Kansas. In Lehigh Cement, a foreign corporation sued for goods sold in Illinois, and the trial court sustained a demurrer to a plea that plaintiff could not maintain its suit until it complied with the laws of this state, and entered judgment for plaintiff. In sustaining the judgment, our Supreme Court said (p 329):

"It is a familiar rule that the legislature has power to impose such conditions as it may choose upon foreign corporations for the exercise of powers and privileges in this State, and such conditions must be complied with. This power of the legislature is, however, subject to the restriction contained in section 8 of article I of the constitution of the United States, which grants to Congress the power to regulate commerce among the several States. The authority of Congress in this regard is exclusive, and no State,

*except in the exercise of the police power for the security* of the lives, health and comfort of persons and *the protection of property,* can make any law or regulation which will affect the free and unrestrained intercourse and trade between the States as Congress has left it, or which will impose any discriminating burden or tax upon the citizens or products of other States coming or brought within its jurisdiction." (Emphasis supplied.)

The foregoing cases do not support plaintiff's contention. The Illinois cases cited do not deal with the Securities Act and are concerned with the Corporation Act and the right of a foreign corporation to sue and be sued in Illinois.

Defendant admits plaintiff is engaged in interstate commerce, and that the Illinois Securities Act does impose a degree of restraint upon that commerce. However, defendant urges that "the salient question presented in this appeal is whether the State of Illinois possesses the legislative jurisdiction to require only qualified persons to act as 'investment advisers' in the State of Illinois; regardless of the intrastate or interstate character of their activities."

■ ■ Although the Securities Act may impose a degree of restraint upon interstate commerce, we do not believe that this fact alone establishes an unconstitutional burden on interstate commerce. As asserted by defendant, pronouncements made in Head v. New Mexico Board of Examiners in Optometry, 374 US 424 (1963), and Huron Cement Co. v. City of Detroit, 362 US 440 (1960), indicate that a state, acting under its own police powers, can control and regulate the activities of those engaged in interstate commerce under the following conditions:

1. Where the regulation is a proper subject of the state's police power.

2. Where those to be controlled are "doing business within the state."

3. Where that regulation does not inflict an undue burden on interstate commerce.

4. Where the activity to be regulated has not been preempted by the Federal government.

We believe that all of the foregoing conditions are present here. As to police power, security regulations have been held to come within the area of the power of the state to prevent frauds and impositions. In Hall v. Geiger-Jones Co., 242 US 539 (1917), it is said (p 552):

> "The intangibility of securities, they being representatives or purporting to be representatives of something else, of property, it may be, in distant states and countries, schemes of plausible pretensions, requires a difference of provision and the integrity of the securities can only be assured by the probity of the dealers in them and the information which may be given of them. This assurance the State has deemed necessary for its welfare to require; and the requirement is not unreasonable or inappropriate. It extends to the general market something of the safeguards that are given to trading upon the exchanges and stock boards of the country, safeguards that experience has adopted as advantageous. Inconvenience may be caused and supervision and surveillance, but this must yield to the public welfare; and against counsel's alarm of consequences, we set the judgment of the State."

As to doing business within the state, there seems to be no dispute. Plaintiff's business is the dissemination of advisory market information, and it was sending its market letter into Illinois to its 30 or 40

subscribers. See International Textbook Co. v. Pigg, 217 US 91; Travelers Health Ass'n v. Virginia, 339 US 643 (1950).

As to the validity of regulations which do not inflict an undue burden on interstate commerce, in Huron Cement Co. v. Detroit, 362 US 440, the court stated (p 443):

> "In determining whether the state has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution when 'conferring upon Congress the regulation of commerce, . . . never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution.' . . . But a state may not impose a burden which materially affects interstate commerce in an area where uniformity of regulation is necessary."

And, again, on p 448:

> "State regulation, based on the police power, which does not discriminate against interstate commerce or operate to disrupt its required uniformity, may constitutionally stand."

Also, in Breard v. Alexandria, 341 US 622 (1951), it is said (p 634):

> "Under our constitutional system, there necessarily remains to the States, until Congress acts, a wide range for the permissible exercise of power appropriate to their territorial jurisdiction although interstate commerce may be affected. . . .

281

States are thus enabled to deal with local exigencies and to exert *in the absence of conflict with federal legislation* an essential protective power." (Emphasis supplied.)

As to Federal preemption of the securities area, plaintiff cites nothing to support the proposition that the Illinois Securities Act is in conflict with any Federal act. The Federal Investment Adviser Act of 1940 (15 USCA § 80b–18a) specifically provides that the Act shall not affect the jurisdiction of states where the regulation is not in conflict with the Act.

■ Section 8 of the Securities Act regulates the qualifications and activities of those engaged in the business of "investment adviser." It is legislation enacted pursuant to the police powers of the state and it regulates an occupation affecting the welfare and property of the citizens of the State of Illinois. Merrick v. Halsey & Co., 242 US 568 (1917); Lehigh Portland Cement Co. v. McLean, 245 Ill 326, 92 NE 248.

Information and advice as to the advisability of investing in, purchasing or selling securities, is of substantial importance in the securities field, whether given in person or by means of a so-called "stock market advisory letter" through the mails. Blue Sky Law legislation has been upheld because "schemes of plausible pretensions" require "a difference of provision and the integrity of the securities can only be assured by the probity of the dealers in them and the information which may be given of them." (Hall v. Geiger-Jones Co., 242 US 539, 552.) The fact that such regulation may burden interstate commerce is not controlling. We think the instant "market advisory letter" comes within the scope of the Blue Sky Law and police power pronouncements and to be a subject of supervision and surveillance in order to prevent fraud or deception.

We conclude that the Illinois Securities Law of 1953 is a proper use of police power to insure that only competent individuals of integrity act in the securities field for the welfare of the people of the state, and, although plaintiff may be engaged in interstate commerce, the incidental inconvenience which may be caused plaintiff must yield to the public welfare. The Federal government has not preempted this area of activity, and plaintiff should not be permitted to act as an "investment adviser" in the State of Illinois until it complies with the statutory regulations of section 8 of the Illinois Securities Act.

Our foregoing considerations and conclusions dispose of the remainder of plaintiff's contentions. We find that the record does not show that the findings and conclusions of the administrative agency are contrary to the manifest weight of the evidence and the law.

For the reasons given, the order of the Circuit Court is affirmed.

Affirmed.

BURMAN, P. J. and KLUCZYNSKI, J., concur.