THE PEOPLE *ex rel.* ILLINOIS STATE DENTAL SOCIETY *et al.*, Plaintiffs-Appellees, *v.* LESTER SUTKER, d/b/a All-State Dental Laboratory, Defendants-Appellants.

First District (5th Division) No. 79-370

Opinion filed August 24, 1979.—Rehearing denied September 25, 1979.

Richard S. Kuhlman and Sheldon Gardner, of Foss, Schuman & Drake, of Chicago, for appellants.

Peterson, Ross, Schloerb & Seidel, of Chicago (Russell M. Pelton and Pat Chapin, of counsel), for appellees.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Defendant, a dental technician engaged in the repair and duplication of dentures, appeals from the entry of summary judgment against him. In its order, the trial court (1) found that his business activities constituted the unlicensed practice of dentistry, in violation of "An Act to regulate the practice of dental surgery and dentistry * * *" (Ill. Rev. Stat. 1977, ch. 111, par. 2202 *et seq.*) (hereinafter Dental Practice Act); and (2) directed that a writ of injunction issue prohibiting him from continuing such activities. The issues presented are (a) whether defendant was actually practicing dentistry in Illinois and thus subject to the statute's

proscriptions, where all his customers were from out of State; (b) whether the application of the Dental Practice Act against defendant exceeds the bounds of the State's police power; and (c) whether Federal law has preempted the application of the Dental Practice Act against defendant.

Plaintiffs, in their amended complaint for injunction, alleged that defendant is a dental technician who is not licensed to practice dentistry in Illinois; that he is doing business as All-State Dental Laboratory (All-State) in Chicago; that in the course of such business he has represented himself as being able to test deficiencies of human teeth, advertised that he is able to treat such deficiencies, managed a place where dental operations are performed for compensation, and constructed, reproduced or repaired prosthetic dentures, bridges and other replacements for natural teeth. Additionally, it was alleged that such acts constitute the practice of dentistry under the Dental Practice Act; that defendant has solicited patronage for the practice of dentistry; and that he has practiced dentistry under the name of a corporation or company, in violation of the Dental Practice Act. Plaintiffs requested defendant and his employees be permanently enjoined from all such acts and that costs be awarded pursuant to section 17a of the Dental Practice Act (Ill. Rev. Stat. 1977, ch. 111, par. 2244).

Defendant initially filed a motion to dismiss, which was denied, and plaintiffs then moved for summary judgment—asserting that there were no material questions of fact and that they were entitled to judgment as a matter of law. In support thereof, they submitted portions of defendant's deposition in which he stated that he has never been a licensed dentist; that none of his employees are licensed dentists; that he placed an advertisement for All-State in the Old Farmer's Almanac offering to duplicate dentures by mail order; that All-State is a division of Morse Laboratories, which is owned by defendant and his wife; that All-State handles approximately 2,000 mail orders for dentures per year; and that orders are received from persons in other states but not from Illinois. Two supporting affidavits are also submitted by plaintiffs. The first was that of Mrs. Guy Klepsteen of Davenport, Iowa, stating that she sent a damaged dental plate to All-State with a letter requesting that it be repaired and a duplicate made; that she enclosed therewith a check for $84; and that she subsequently received in the mail from All-State the repaired plate and a duplicate. In the second affidavit, Guy Klepsteen, of Davenport, stated that he sent to All-State a damaged denture, which was provided by the Illinois State Dental Society, along with a letter requesting that the denture be repaired; that he enclosed a check for $34.95, and that he subsequently received from All-State the repaired denture and a check for $24.95 representing a refund for overpayment. Copies of the letters and cancelled checks which the affiants had sent to All-State were

submitted with the motion, as well as other portions of defendant's deposition wherein he acknowledged the transaction with Guy Klepsteen.

Defendant then filed his answer to the complaint for injunction and a counterclaim. His answer included affirmative defenses as follows: (a) that since he made dentures only for out-of-State residents, he was not engaged in the practice of dentistry in the State of Illinois and thus was not subject to the statute; (b) that the State's police power cannot extend to regulate his business where his customers are all from out of State; and (c) that Federal law has preempted the application of Illinois' Dental Practice Act against him.

The trial court entered an order granting plaintiffs' motion to dismiss defendant's affirmative defenses and counterclaim. The same order also granted summary judgment in favor of plaintiffs and enjoined defendant from the practices complained of. Subsequently, in another order, plaintiffs were awarded costs and attorney's fees in the amount of $3,310.95 under section 17a of the Dental Practice Act.

Defendant notices this appeal from those orders but, in his briefs here, does not raise any issue as to the dismissal of his affirmative defenses and counterclaim or as to the award of costs and attorney's fees. He questions only the propriety of the summary judgment.

OPINION

At the outset, we note that the record reveals essentially no dispute as to the facts. The affidavits and deposition excerpts presented on the motion for summary judgment establish that defendant was not a licensed dentist but was the owner and operator of All-State Dental Laboratories which, by means of an advertisement placed in the Old Farmer's Almanac, offered to duplicate dentures by mail order; that All-State handles approximately 2,000 such orders per year—all from out-of-State residents—and, in fact, repaired and duplicated dentures for Mr. and Mrs. Guy Klepsteen, of Iowa, for a fee. It would appear that the trial court found that these acts constituted the practice of dentistry under at least the following subsections of section 5 of the Dental Practice Act:

"A person practices dentistry, within the meaning of this Act:

* * *

(2) Who is a manager, proprietor, operator or conductor of a place where dental operations are performed; or

(3) Who performs dental operations of any kind gratuitously, or for a fee, gift, compensation or reward, paid or to be paid, either to himself or to another person or agency; or

* * *

(9) Who furnishes, supplies, constructs, reproduces or repairs, or offers to furnish, supply, construct, reproduce or repair prosthetic

dentures (sometimes known as 'plates'), bridges or other substitutes for natural teeth, to the user or prospective user thereof; * * *." (Ill. Rev. Stat. 1977, ch. 111, par. 2217.)

Defendant does not challenge the propriety of summary judgment on the basis that any material question of fact existed; rather, his contentions are legal in nature—contending that, for various reasons, the proscriptions of the Dental Practice Act cannot apply to him.

■■ He first argues that because all of his customers were out-of-State residents, he did not actually practice dentistry "within the state of Illinois" and thus was not in violation of the Dental Practice Act. We disagree. Section 3 of the Dental Practice Act provides in relevant part:

"No person, unless previously registered or licensed to practice dentistry in this State at the time this Act shall become operative, *shall begin the practice of dentistry* or dental surgery, or any branches thereof, without first applying for and obtaining a license for such purpose from the Department of Registration and Education, * * *." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 111, par. 2206.)

Activities which constitute "the practice of dentistry" within the context of the Dental Practice Act are set forth in section 5 thereof (Ill. Rev. Stat. 1977, ch. 111, par. 2217), and we note that none of these require that the recipient of the dental services be a resident or citizen of Illinois. We accordingly conclude that the fact that defendant's customers were not Illinois residents did not remove him from the proscriptions of the Dental Practice Act.

Defendant next maintains that the Dental Practice Act cannot be applied as against him within permissible constitutional bounds. As this court stated in *Marketlines, Inc. v. Chamberlain* (1965), 63 Ill. App. 2d 274, 211 N.E.2d 399:

"[A] state, acting under its own police powers, can control and regulate the activities of those engaged in interstate commerce under the following conditions:

1. Where the regulation is a proper subject of the state's police power.

2. Where those to be controlled are 'doing business within the state.'

3. Where that regulation does not inflict an undue burden on interstate commerce.

4. Where the activity to be regulated has not been preempted by the Federal government." (63 Ill. App. 2d 274, 279-80, 211 N.E.2d 399, 401-02.)

Defendant attacks the application of the Dental Practice Act on two of the four above grounds. First, he argues that applying the Act against him

exceeds the permissible bounds of the State's police power. He points to the familiar definition of the police power as the authority possessed by the government to enact legislation for the benefit of the "public welfare, safety, and health of the citizens of the State, * * * the power * * * being founded on the duty of the State to protect its citizens" (16 C.J.S. *Constitutional Law* §175 (1956)), and he takes the position that since all of his customers are out-of-State residents, Illinois has no duty to protect them and thus could not regulate the rendering of dental services to such out-of-State persons under the police power.

 We note that the Dental Practice Act has been declared to be a proper exercise of the police power. (*People ex rel. Chicago Dental Society v. A.A.A. Dental Laboratories, Inc.* (1956), 8 Ill. 2d 330, 134 N.E.2d 285, *appeal dismissed* (1956), 352 U.S. 863, 1 L. Ed. 2d 73, 77 S. Ct. 97; *People ex rel. Watson v. Spinka* (1978), 58 Ill. App. 3d 729, 374 N.E.2d 787; *People ex rel. Illinois State Dental Society v. Vinci* (1976), 35 Ill. App. 3d 474, 342 N.E.2d 206.) However, there is no indication as to whether the customers of the defendants in those cases were out-of-State residents. The specific challenge raised by defendant in the instant case does not appear to have been previously considered, and it is thus necessary to review the relevant principles involved. In this regard, it is clear that the police power is the sovereign authority of the State to pass laws which are designed to protect the health, safety, welfare or morals of the public (*Chicago & Alton R.R. Co. v. Tranbarger* (1915), 238 U.S. 67, 59 L. Ed. 1204, 35 S. Ct. 678; *Bacon v. Walker* (1907), 204 U.S. 311, 51 L. Ed. 499, 27 S. Ct. 289), and this includes the power of the State to require that only persons possessing reasonable qualifications may engage in the practice of a profession such as dentistry (*Semler v. Oregon State Board of Dental Examiners* (1935), 294 U.S. 608, 79 L. Ed. 1086, 55 S. Ct. 570; *Graves v. Minnesota* (1926), 272 U.S. 425, 71 L. Ed. 331, 47 S. Ct. 122). "[T]he standard of a proper exercise of the police power is whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare" (*Heimgaertner v. Benjamin Electric Mfg. Co.* (1955), 6 Ill. 2d 152, 159, 128 N.E.2d 691, 695), and "the measures adopted must be reasonably necessary and appropriate for the accomplishment of legitimate objects within the domain of the police power" (*People v. Witte* (1925), 315 Ill. 282, 285, 146 N.E. 178, 180; see also *East Side Levee & Sanitary District v. East St. Louis & Carondelet Ry.* (1917), 279 Ill. 123, 116 N.E. 720). The State has wide discretion in determining what measures are necessary to promote the safety and welfare of its people (*Terrace v. Thompson* (1923), 263 U.S. 197, 68 L. Ed. 255, 44 S. Ct. 15), and debatable questions as to the reasonableness of police regulations are for the legislature, not the courts, to resolve (*Sproles v. Binford* (1932),

286 U.S. 374, 76 L. Ed. 1167, 52 S. Ct. 581), subject to the restriction that all exercises of the police power must be made within constitutional bounds (*Panhandle Eastern Pipe Line Co. v. State Highway Com.* (1935), 294 U.S. 613, 79 L. Ed. 1090, 55 S. Ct. 563; *Witte*).

■■ Turning to the case at bar, we note that the General Assembly, in enacting the Dental Practice Act, made the following legislative declaration:

> "The practice of dentistry in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the dental profession merit and receive the confidence of the public and that only qualified persons be permitted to practice dentistry in the State of Illinois." (Ill. Rev. Stat. 1977, ch. 111, par. 2202.)

As stated above, the State may, as a legitimate object of the police power, protect the public by requiring individuals who provide dental services to meet certain qualifications. Thus, the relevant inquiry is whether the Dental Practice Act is a reasonable and appropriate means of accomplishing such protection of the public. We believe that it is. The requirement that all individuals within the State who provide dental services to anyone must be licensed is an effectively appropriate means of protecting the people of Illinois from unqualified practitioners. While it is true that the effect of the statute would also prevent an unlicensed individual from rendering dental services for persons who are not citizens of Illinois and whom the State has no duty to protect, we do not feel that this result requires a finding that the legislature has acted beyond the permissible scope of its police power. We emphasize at this point, however, that such out-of-State individuals are not being "regulated" by the statute but are merely beneficiaries of the protection afforded by it. We know of no case, and defendant has cited none, which would indicate that a statute which otherwise is a valid exercise of the police power must be held invalid because its protection incidentally extends to out-of-State citizens. This reasoning leads us to the belief that the application of the Dental Practice Act against defendant was not an abuse of the police power.

■■ Secondly, defendant attacks the application of the Dental Practice Act against him on the ground that it has been preempted by the following Federal statute:

> "Whoever transports by mail or otherwise to or within the District of Columbia, the Canal Zone or any Possession of the United States or uses the mails or any instrumentality of interstate commerce for the purpose of sending or bringing into any State or Territory any set of artificial teeth or prosthetic dental appliance or

other denture, constructed from any cast or impression made by any person other than, or without the authorization or prescription of, a person licensed to practice dentistry under the laws of the place into which such denture is sent or brought, where such laws prohibit:

(1) the taking of impressions or casts of the human mouth or teeth by a person not licensed under such laws to practice dentistry;

(2) the construction or supply of dentures by a person other than, or without the authorization or prescription of, a person licensed under such laws to practice dentistry; or

(3) the construction or supply of dentures from impressions or casts made by a person not licensed under such laws to practice dentistry—

Shall be fined not more than $1,000 or imprisoned not more than one year." (18 U.S.C. §1821 (1976).)

Defendant posits that this statute has suspended the power of the States to enact legislation concerning the mailing of dentures and that the Dental Practice Act therefore cannot be invoked against him because all of his transactions were conducted through the mail. We disagree. We view the facts of the instant case as being analogous to those presented in *Roth v. United States of America* (1957), 354 U.S. 476, 1 L. Ed. 2d 1498, 77 S. Ct. 1304. There, a California statute prohibited the keeping or advertising of obscene or indecent material, and a Federal statute proscribed the mailing of obscene materials. In response to an argument that Congress, in enacting the Federal law, preempted the regulatory field and thus nullified the California statute, the United States Supreme Court stated:

"The federal statute deals only with actual mailing; it does not eliminate the power of the state to punish 'keeping for sale' or 'advertising' obscene material. The state statute in no way imposes a burden or interferes with the federal postal functions. '* * * The decided cases which indicate the limits of state regulatory power in relation to the federal mail service involve situations where state regulation involved a direct, physical interference with federal activities under the postal power or some direct, immediate burden on the performance of the postal functions. * * *' [Citation.]" (354 U.S. 476, 493-94, 1 L. Ed. 2d 1498, 1512, 77 S. Ct. 1304, 1314.)

Similarly, in *State v. Reader's Digest Association, Inc.* (1972), 81 Wash. 2d 259, 501 P.2d 290, *appeal dismissed* (1973), 411 U.S. 945, 36 L. Ed. 2d 406, 93 S. Ct. 1927, the court held that the Reader's Digest Sweepstakes violated Washington's Consumer Protection Act (Wash. Rev. Code Ann. §19.86.020 (1978)), which prohibited unfair methods of competition. The

court rejected the contention that Congress, in enacting legislation concerning the use of mails in lotteries, preempted the field, stating:

> "While it is true the state is without power to regulate the mail, it is not powerless to prevent respondent from using unfair trade practices within its borders. [Citation.] The state cannot enjoin the mails, but it can enjoin respondent from conducting the Sweepstakes within its borders, subjecting respondent to the penalties of the Consumer Protection Act for refusal to comply." (81 Wash. 2d 259, 278, 501 P.2d 290, 303.)

In the case at bar, as in *Roth* and *Reader's Digest Association*, the State statute in question does not impose a burden upon or interfere with the mails, but merely regulates the activities of those persons in the State who seek to practice dentistry. Thus, we find that the General Assembly, in enacting the Dental Practice Act, has not encroached an area governed by Federal law, and we conclude that Congress has not preempted the application of the Dental Practice Act against defendant.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

LORENZ and MEJDA, JJ., concur.