533 F.Supp. 86 (1981)
Bill GUNTER, Insurance Commissioner, State of Florida, Plaintiff,
v.
AGO INTERNATIONAL B. V., a Netherlands corporation; et al., Defendants.
No. TCA 81-1014.
United States District Court, N. D. Florida, Tallahassee Division.
December 3, 1981.
*87 Allan J. Katz, Asst. Insurance Commissioner, S. Strom Maxwell, Raymond F. Behling, Chief Atty., Dept. of Insurance, Tallahassee, Fla., for plaintiff.
H. Michael Madsen, Messer, Rhodes & Vickers, Tallahassee, Fla., Allan Pepper, Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants.

ORDER
STAFFORD, Chief Judge.
Before the court is plaintiff's motion to remand (Document 3) the cause of action filed by him in state court and subsequently removed by the defendants to federal court. The parties have submitted memoranda (Documents 4, 6, 7, 8 and 10), and a hearing on the motion was held on November 2, 1981.
Plaintiff filed the complaint in Leon County Circuit Court on October 14, 1981 which sought to enjoin a violation of the Florida Insurance Holding Company Act, Section 628.461, Florida Statutes (the "Florida Act"). Defendants petitioned for removal of the cause to federal court on the grounds of diversity and federal question jurisdiction.
The right of the defendant in a state court civil action to remove the action to federal court is governed by 28 U.S.C. § 1441(a), which provides as follows:
Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. *88 One means of obtaining original jurisdiction is diversity of citizenship. 28 U.S.C. § 1332. A state is not a "citizen" of any state; therefore, when a state is a real party in interest, the case cannot be removed on the basis of diversity. Poastal Telegraph Cable Co. v. Alabama, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894); Minnesota v. Northern Securities Co., 194 U.S. 48, 24 S.Ct. 598, 48 L.Ed. 870 (1904); Florida State Turnpike Authority v. Van Kirk, 146 F.Supp. 364 (S.D.Fla.1956). Further, a state official acting on behalf of the state is generally the alter ego of the state and not a citizen for diversity purposes. Centraal Stikstof Verkoopantoor, N.V. v. Alabama State Docks Department, 415 F.2d 452 (5th Cir. 1969); Louisiana Land and Exploration Co. v. State Mineral Board, 229 F.2d 5 (5th Cir.), cert. denied, 351 U.S. 965, 76 S.Ct. 1029, 100 L.Ed. 1485 (1956).
Defendants argue that the state is not the real party in interest in this action, and the Commissioner's citizenship creates diversity jurisdiction. This court does not agree with that contention. In Moor v. County of Almeda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), the United States Supreme Court noted the difference between entities that possess "corporate powers" and those that do not. The Department of Insurance does not possess corporate-type powers such as the power to "sue and be sued" or power to hold its own property. Accordingly, the Florida Department of Insurance, with Bill Gunter as its official head, should be considered the alter ego of the state and thus is not a citizen for the purpose of federal diversity jurisdiction.
Defendants have also based their removal petition on federal question jurisdiction 28 U.S.C. § 1331. Generally, the federal question must be presented by plaintiff's complaint, Gully v. First National Bank in Meridian, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), and not raised solely in defense to a state law claim. Phillips Petroleum Co. v. Texaco, Inc., 415 U.S. 125, 94 S.Ct. 1002, 39 L.Ed.2d 209 (1974). Some jurisdictions, however, recognize an exception to this general rule. Regardless of the way the complaint is framed, if the state law upon which the plaintiff relies is entirely preempted by federal law, the case is removable. Fristoe v. Reynolds Metal Co., 615 F.2d 1209, 1212 (9th Cir. 1980); North Davis Bank v. First National Bank, 457 F.2d 820, 823 (10th Cir. 1972); Avco Corp. v. Aero Lodge No. 735 International Association of Machinists, 376 F.2d 337, 340 (6th Cir. 1967), aff'd, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); Billy Jack For Her, Inc. v. New York Coat, Suit, Dress, Rainwear and Allied Workers' Union, 511 F.Supp. 1180, 1187 (S.D.N.Y.1981); In re Wiring Device Antitrust Litigation, 498 F.Supp. 79, 82-83 (E.D. N.Y.1980); Teamsters Local 116 v. Fargo-Moorhead Automobile Dealers Association, 459 F.Supp. 558, 560 (D.N.D.1978); First Federal Savings & Loan Association v. First Federal Savings & Loan Association, 446 F.Supp. 210, 212 (N.D.Ala.1978); New York v. Local 144, Hotel, Nursing Home & Allied Health Services Union, 410 F.Supp. 225, 229 (S.D.N.Y.1976); Rettig v. Arlington Heights Federal Savings & Loan Association, 405 F.Supp. 819, 823 (N.D.Ill.1975).
It appears that the Eleventh Circuit has neither accepted nor rejected this widely recognized exception. This court, however, finds the well-reasoned discussions in the aforementioned cases persuasive. When the state law is preempted by federal law, then federal law provides the only basis for the plaintiff to gain relief, thereby causing the action to arise under federal law.
In enacting the various federal securities acts Congress did not preempt the field. State securities laws, therefore, remain valid unless they conflict with the federal acts. See People v. Sears, 138 Cal. App.2d 773, 292 P.2d 663 (1956); Marketlines, Inc. v. Chamberlain, 63 Ill.App.2d 274, 211 N.E.2d 399 (1965). There is no precise formula that a court can apply to determine whether a state statute is void under the supremacy clause. U.S.Const. art. VI, cl. 2. The Supreme Court summarized the nature of a court's inquiry into this matter in Jones v. Rath Packing Co.:
Congressional enactments that do not exclude all state legislation in the same *89 field nevertheless override state laws with which they conflict. U.S.Const. Art. VI. The criterion for determining whether state and federal laws are so inconsistent that the state law must give way is firmly established in our decisions. Our task is "to determine whether, under the circumstances of this particular case, [the state's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, 315 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1940). Accord, De Canas v. Bica, 424 U.S. 351, 363, 96 S.Ct. 933, [940] 47 L.Ed.2d 43 (1976); Perez v. Campbell, 402 U.S. 637, 649, 91 S.Ct. 1704, [1711] 29 L.Ed.2d 233 (1971); Florida Lime & Avocado Growers v. Paul, supra, [373 U.S. 132] at 141, 83 S.Ct. [1210] at 1217 [10 L.Ed.2d 248]; id. at 165, 83 S.Ct. at 1229 (White, J., dissenting). This inquiry requires us to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written. See De Canas v. Bica, supra, 424 U.S. at 363-365, 96 S.Ct. at 940-941; Swift & Co. v. Wickham, 230 F.Supp. 398, 408 (S.D.N.Y.1964), appeal dismissed, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965), aff'd on further consideration, 364 F.2d 241 (CA 2 1966), cert. denied, 385 U.S. 1036, 87 S.Ct. 776, 17 L.Ed.2d 683 (1967).
430 U.S. 519, 525-26, 97 S.Ct. 1305, 1309-1310, 51 L.Ed.2d 604 (1977).
The Florida Act requires that prior to making purchases of five percent or more of the outstanding securities of any company which owns twenty-five percent or more of a Florida insurer a statement with respect to the proposed purchases must be filed with the Department of Insurance which must approve those purchases. On September 21, 1981, defendants, without filing the required statement with the Department, commenced their tender offer for fifteen percent of the common stock of Life Investors, Inc., an Iowa insurer which owns 100% of Investors Life of Florida Insurance Company, a Florida insurer.
The defendants maintain that the Florida Act is preempted by federal law (i.e., the Williams Act, 15 U.S.C. §§ 78n(d), (e)). Before applying the guideline set forth in Hines, "whether ... [the State's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," it is helpful to look at the Williams Act.
The underlying purpose of the Williams Act is to protect investors. Piper v. Chris-Craft Industries, 430 U.S. 1, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977). Congress chose to rely on a "market approach" to investor protection to achieve this goal. Great Western United Corp. v. Kidwell, 577 F.2d 1256, 1276 (5th Cir. 1978), rev'd on other grounds sub nom. Leroy v. Great Western United Corp., 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). Basically, under the "market approach" concept, federal law requires that tender offerors make full disclosure of all material facts to allow investors to make their own investment decisions and decide, on their own, whether to accept or reject the tender offer.
Congress recognized that tender offers often benefit investors; therefore, the Williams Act was not designed to obstruct legitimate takeover bids. The law imposes neutrality among the contestants in a tender offer by requiring full and fair disclosure for the benefit of investors while simultaneously providing the offeror and management equal opportunity to fairly present their cases.
Congress realized that delay could seriously impede a tender offer; therefore, it rejected the requirement of precommencement review by the Securities Exchange Commission. See Great Western United Corp. v. Kidwell, 577 F.2d 1256, 1277 (5th Cir. 1978) rev'd on other grounds sub nom. Leroy v. Great Western United, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979) citing S.Rep.No. 550, 90th Cong. 1st Sess. 5 (1967). Lengthy delays benefit the target firm by giving incumbent management time to frustrate the tender offer. Courts have noted that "[t]he single most effective weapon a target company may utilize to *90 defeat a tender offer is delay." Dart Industries, Inc. v. Conrad, 462 F.Supp. 1, 9 (S.D.Ind.1978).
It is clear that the Florida Act conflicts with and frustrates the clear purposes of the Williams Act. The Florida Act requires the tender offeror to file with the Department of Insurance and send to the insurer and controlling company a statement detailing the offer at least sixty days prior to the time any form of tender offer is furnished to security holders. Fla.Stat. § 628.461(1)(a). This sixty-day period enables incumbent management to gain valuable time in its efforts to defeat the tender offer, thereby dissolving the neutrality which Congress strived to achieve by the Williams Act.
Under the Florida Act, the Department of Insurance must approve the proposed offer before any form of tender offer can be made to security holders. Fla.Stat. 628.461(1)(b). This requirement directly conflicts with the Williams Act's "market approach" concept, whereby the security holders make their own investment decisions with respect to the merits of such tender offer.
The Florida Act requires substantially more disclosure than the Williams Act. Compare Fla.Stat. § 628.461(3), (4) with Schedule 14D-1, 17 CFR 240.14d-100 (1981). This additional material appears unnecessary for an investor to make an informed decision. Accord: Great Western United Corp. v. Kidwell, 577 F.2d 1256 (5th Cir. 1978), rev'd on other grounds sub nom. Leroy v. Great Western United Corp., 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979).
This court is of the opinion that the Florida Act conflicts with the Williams Act; thus, the Williams Act preempts the Florida Act. It is clear that the Florida Act's requirements tip the balance in favor of incumbent management by imposing a delay which Congress and the courts have recognized as an effective weapon of the target company. Furthermore, the Florida Act replaces the "market approach" concept with its provision for the Department of Insurance's approval before a tender offer can be made to the security holders.
In accordance with the foregoing, it is
ORDERED AND ADJUDGED that plaintiff's motion to remand is DENIED.