Neel, Stephen E., J.
Plaintiff Molly A. Hays (“Hays”) brings this suit against defendants David J. Ellrich (“Ellrich”), Morgan Financial Advisors, Inc. (“MFA”), and U.S. National Banking Association, d/b/a U.S. Bank, f/k/a Firstar Bank, N.A. (“U.S. Bank”) for allegedly mismanaging her investment funds. Ellrich and MFA move for summary judgment on the claims for fraud (Count I), breach of contract (Count II), breach of fiduciary duty (Count IV), and violation of G.L.c. 110A, §410 (Count V). They argue that (1) Hays’s claims against MFA are preempted by federal law pertaining to federally registered investment advisors and are barred by the statute of limitations; (2) the complaint fails to plead fraud claims with sufficient particularity; (3) there was no client/fiduciary relationship between Hays and MFA; and (4) Ellrich and MFA did not sell a security to Hays. For the reasons set forth below, Ellrich and MFA’s motion will be denied.
BACKGROUND
Unless otherwise noted, the following facts are undisputed for the purposes of this motion.
On September 11, 2006, Hays filed a six-count complaint against the defendants for fraud, two counts of breach of contract, breach of fiduciary duty, violation of G.L.c. 110A, §410, and estoppel. Hays, a resident of Lutz, Florida, who was fifty-five years old when she filed suit, and her late husband had worked for Pan American World Airways. When the airline dissolved in 1991, the Hayses retired and relied on Ellrich to serve as their investment advisor and to manage their funds. Ellrich continued managing the retirement funds after Hays’s husband passed away in 1993. During the time he served as an investment advisor to Hays, Ellrich worked for Dean Witter, Oppenheimer & Co., and Linsco/Private Ledger Corp.
On July 2, 1996, Ellrich formed MFA, a Massachusetts corporation, and became its sole officer. MFA is a licensed investment advisor under the Investment Advisers Act of 1940 (“IAA’j; Ellrich is a duly licensed representative of MFA under the IAA. MFA entered into an investment advisory agreement with Hays in 2000. Prior to December 31, 2000, Hays opened two market-timing accounts, one each at Rydex Series Trust (“Rydex”) and at Profunds Investments (“Profunds”). The remaining MFA assets were invested in long-term vehicles at Fidelity Investments. MFA was designated as the Registered Investment Advisor of record on all three accounts and accepted, in writing, advisory responsibility on all these accounts.
In November 2000, Ellrich terminated MFA’s market timing advisory business for all individual advisory accounts (including Hays’s) held at Profunds and Rydex, as of December 31, 2000.
The parties dispute whether Hays was notified that MFA could not serve as her investment advisor with respect to the Convergent Market Fund II (“CMF”). Ellrich and MFA contend that in early December 2000, Ellrich spoke to Hays by telephone and informed her that after December 31, 2000, MFA’s advisory services would be limited to her investment funds held at Fidelity. He claims that he told her that because MFA would be advising the CMF General Partner/CMF fund, MFA could not advise individual investors. According to Ellrich and MFA, Hays was also sent documents from Emerging Health Capital Partners (“EHCP”), the General Partner of CMF, which stated that the partnership intended to hire MFA as an investment advisor for the fund.
Hays denies that she was aware that her client/ad-visor relationship with Ellrich was severed as a result of her decision to invest in the CMF. Hays states that she had no way of knowing that a conflict of interest would prevent MFA and Ellrich from advising both her and CMF. Furthermore, she claims that Ellrich’s failure adequately to disclose the conflict of interest led, in part, to her decision to invest funds in the CMF. After she was informed that MFA was terminating its market timing advisory business on Hays’s Rydex and Profunds accounts, she chose to invest in CMF because Ellrich presented it as her only option and “made it seem routine and consistent with her investment objectives.” Plaintiffs Response to Defendants’ Factual Representations, at para. 14.
*28 On December 28, 2000, Hays sent a CMF subscription application to EHCP and was accepted into the CMF partnership. On January 4, 2001, Hays completed signed paperwork instructing both Rydex and Profunds to move her funds to U.S. Bank, the qualified custodian for CMF. The Rydex and Profunds accounts were liquidated and transferred on January 8, 2001 and January 11, 2001, respectively. Hays contends that Ellrich either provided her with or arranged for her to receive all forms for closing her accounts and transferring money into the CMF. MFA claims that it was unaware of Hays’s decision to invest in CMF until Rydex and Profunds notified MFA that Hays closed her accounts and moved the funds to U.S. Bank.
According to Ellrich and MFA, because Hays chose not to transfer her Rydex and Profunds account funds into her MFA-managed Fidelity account, the advisory relationship between MFA and Hays was terminated. MFA states that it did not charge advisory fees to Hays for her Rydex, Profunds, or any other non-Fidelity investment account for any period of time after December 2000. MFA also did not receive a commission or fee for Hays’s acceptance into the CMF partnership. Hays states that whether Ellrich and MFA charged a fee was irrelevant, because they stood to gain from persuading clients to invest in the CMF.
MFA and Ellrich characterize Hays as a person with business expertise, including managing her own IRA and making her own investment decisions for over twenty years. Hays describes this experience as routine personal finance matters, such as preparing annual tax returns and depositing money into an established IRA account. Based on these competing descriptions of Hays’s business acumen, the parties dispute what she knew or should have known with regard to Ellrich and MFA’s role as her investment advisor for the CMF fund
Hays did not list MFA as a “purchaser representative” as outlined in the CMF Confidential Investor Questionnaire, and she did not forward duplicate reports of her CMF investment from EHCP to MFA or any other advisor. Nevertheless, Hays contends that through “his statements and actions,” Ellrich led her to believe that he was still her investment advisor with respect to the CMF. While Ellrich and MFA state that they did not advise her regarding any financial decision not assigned and accepted by MFA in writing, she claims that she was advised to engage in futures trading to recover her lost assets. She also states that Ellrich provided her with what appeared to be a hand-typed document entitled “Financial Statement & Net Worth” following her investment in CMF. By the end of2002, Ellrich stopped sending written statements to Hays and instead reported her account balance, including the value of the CMF, via telephone.
On April 16, 2003, during a conference call with EHCP and U.S. Bank, MFA was notified of U.S. Bank’s accounting errors regarding the CMF. After this time, MFA was no longer a party to any conversations between the GP and U.S. Bank. In late August 2003, after EHCP informed MFA that they were unable to reach a resolution with U.S. Bank regarding the CMF, Ellrich was granted written permission by EHCP to file a civil complaint against U.S. Bank as a limited partner and on behalf of the other limited partners. The lawsuit was filed in Superior Court on August 27, 2003, and then removed to U.S. District Court.
MFA was given access to the contact information for ninety-seven limited partners in the CMF, including Hays. On September 11, 2003, Ellrich spoke with Hays for approximately forty minutes to discuss the U.S. Bank/CMF issue. The parties disagree as to whether Ellrich and MFA made representations regarding the outcome of the legal efforts against U.S. Bank. Hays states that, in addition to assuring her that her money from the CMF would be returned, Ellrich told her on numerous occasions that he would earn a profit for her through futures trading. The SEC and the Commonwealth of Massachusetts Securities Division were notified regarding the CMF/U.S. Bank matter, and after investigative audits, both agencies independently issued a determination of “No Action” with respect to MFA.
DISCUSSION
Summary judgment may be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassessou. Comm’r of Corr., 390 Mass. 419, 422 (1983). A moving party that does not bear the burden of proof at trial is entitled to summary judgment if it submits affirmative evidence, unmet by countervailing materials, that either negates an essential element of the nonmoving party’s case or demonstrates that the nonmoving party has no reasonable expectation of proving an essential element of its case. Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991). When a motion for summary judgment is made and supported as provided by Rule 56, the nonmoving party may not “rest upon the mere allegations or denials of his pleadings,” but his response “must set forth specific facts showing that there is a genuine issue for trial.” Mass.R.Civ.R 56(e).
I. Preemption of Hays’s Claims by the IAA
Ellrich and MFA argue that they are not subject to the Massachusetts Uniform Securities Act (“MUSA”) with respect to Hays’s claims against them; instead, because the IAA was intended to preempt state securities law, they urge this Court to apply federal securities law. Ellrich and MFA’s Memorandum of Law, p. 6. They rely on the application of federal securities law as the basis for their arguments that:
(1) Because Hays did not bring her securities claim within two years of learning of the fraud, her claim is barred by the statue of limitations.
*29 (2) Hays’s recovery against Ellrich and MFA as her investment advisors is limited to rescission of the contract and the return of any fees paid pursuant to that contract, of which there were none in this case.
(3) Hays’s complaint fails to meet the heightened pleading standard set forth in SEC Rule 10b-5, which requires that the plaintiff prove: a material misrepresentation, scienter, a connection with the purchase or sale of a security, reliance, economic loss, and loss causation. See Dura Pharm., Inc. v. Broudo, 554 U.S. 336, 341 (2005).
(4) Hays bears the burden of showing that the CMF was an unsuitable investment for her and that Ellrich and MFA, not EHCP, served as investment advisors to her.
(5) Hays was not a client of Ellrich or MFA because they did not provide investment advisory services in exchange for compensation.
(6) Because MFA was a federally registered investment advisor under the IAA for all times relevant to Hays’s claim, Ellrich and MFA are not subject to regulation under G.L.c. 110A, §410.
Ellrich and MFA’s contention that the IAA preempts state securities law is erroneous, and as a result, the arguments resting on this premise must fail. The statute itself captures Congress’s intent not to preempt state regulation of investment advisers: “Nothing in this subchapter shall affect the jurisdiction of the securities commissioner (or any agency or officer performing like functions) of any State over any security or any person insofar as it does not conflict with the provisions of this subchapter or the rules and regulations thereunder.” 15 U.S.C. §80b-18a. Moreover, the legislative history identifies the law’s purpose to “express clearly the concurrent jurisdiction in the area of investment advisers, in view of the important role which State authorities must play in the supervision of securities.” S.Rep. No. 1760, 86th Cong., 2d Sess., reprinted in 1960 U.S. Code Cong. & Admin. News 3502, 3511. The IAA makes no claim of exclusive jurisdiction; as such, both the Federal Trade Commission (FTC) and state regulators have been deemed to have concurrent jurisdiction with it to regulate investment advisers. See Fed. Trade Comm’n v. Ken Roberts Co., 276 F.3d 583, 592 (D.C.Cir. 2001) (finding “no express exclusive jurisdiction provision” in the IAA and, therefore, no preemption of the FTC’s power to investigate fraudulent trade practices by investment advisors); Kinsela v. State, Dep’t of Finance, 117 Idaho 632, 635 (1990); Marketlines v. Chamberlain, 63 Ill.App.2d 274, 282-83 (1965). Because IAA does not preempt state regulation of investment advisors, as demonstrated by the statutory language and case law in support of concurrent jurisdiction and the defendants’ failure to cite any relevant law to the contrary, state securities law is applicable to Hays’s claims.
Consequently, many of the defendants’ arguments fail:
(1) The applicable statute of limitations for a securities action arising under G.L.c. 110A, §410 is four years. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 54 n.20 (2004). The date on which Hays did or should have known something was amiss was September 11, 2003. She filed this suit on September 11, 2006, well within the statutory period.
(2) Hays’s claims are not limited to the recovery provided for by the IAA — rescission of the contract and the return of any advisory fees.
(3) Hays need not satisfy the heightened pleading standard set forth by SEC Rule 10b-5. In order to prevail under G.L.c. 110A, §410, the plaintiff needs to establish that:
(a) the defendant offered or sold a security;
(b) in Massachusetts;
(c) by making any untrue statement of material fact or by omitting to state a material fact;
(d) the plaintiff did not know of the untruth or omission; and
(e) the defendant knew, or in the exercise of reasonable care would have known, of the untruth or omission. See Marram, 442 Mass. at 52.
(4) Ellrich and MFA are subject to regulation under G.L.c. 110A, §410.
II. Disputed Material Facts
In addition to their preemption argument, Ellrich and MFA contend that they did not serve as Hays’s investment advisors for the CMF. Because of their investment advisor relationship with CMF’s general partner, EHCP, they were barred from serving as an investment advisor to the fund’s limited partners. Ellrich and MFA assert that they made Hays aware of this position, that she should have known of the conflict from the documents she received from EHCP, and that they provided investment advisory services only for those accounts for which they accepted responsibility in writing. These assertions, however, cannot be accepted as undisputed facts for the purposes of this motion.
Whether Hays was still a client to whom MFA owed a fiduciary duty after she had invested in the CMF is a significant issue in dispute; the investment advisory agreement was still in place according to the terms of the contract, which required written termination. Hays’s Investment Advisory Agreement 7(b). The record provides no indication that written notice was given by either party. Numerous other factual disputes militate against granting summary judgment, including: whether Ellrich adequately conveyed to Hays that her investment in CMF ended their investment advisor relationship; whether Hays, based on her business experience and the documents she received from EHCP, should have known about the conflict; and *30 whether Ellrich and MFA continued to provide investment advisor services to Hays after she invested in the CMF.
ORDER
For the foregoing reasons, Ellrich and MFA’s motion for summary judgment is DENIED.