**MARKETLINES, INC., Petitioner,**

v.

**The SECURITIES AND EXCHANGE COMMISSION, Respondent.**

**No. 139, Docket 31113.**

United States Court of Appeals Second Circuit.

Argued Sept. 27, 1967.

Decided Oct. 9, 1967.

Gideon Cashman, New York City (Pryor, Braun, Cashman & Sherman, Alvin Chriss, New York City, of counsel), for petitioner.

Walter P. North, Associate Gen. Counsel, S. E. C., Washington, D. C. (Philip A. Loomis, Jr., Gen. Counsel, Jacob H. Stillman, Sp. Counsel, Theodore S. Kaplan, Atty., S. E. C., of counsel), for respondent.

Before MOORE, SMITH and KAUFMAN, Circuit Judges.

PER CURIAM:

Marketlines, Inc. (Marketlines) seeks review of an order of the Securities and Exchange Commission (Commission) which revoked its registration as an investment adviser under the Investment Advisers Act of 1940.[1] The Commission relied upon two unrelated series of events. It found that Marketlines, aided and abetted by David S. Romanoff, president, treasurer and sole stockholder, and Harold Schreiber, who was vice-president and secretary until January 11, 1965 and continued his association with the company thereafter, violated the anti-fraud provisions of Section 206 of the Act by publishing misleading advertisements soliciting subscriptions to its market letters "Marketlines" and "The Penny Speculator." It also held that Marketlines violated Sections 203(d), 204 and 207 of the Act, by failing promptly to amend its registration application to disclose that Schreiber was associated with the firm and by not disclosing that Schreiber had been found to have violated various provisions of the securities laws in another proceeding.[2]

■ The challenged advertisements appeared in New York newspapers of general circulation during the early part of 1965. For present purposes it is sufficient to note that the advertisements made exaggerated claims that The Penny Speculator was a "unique" service, backed by the research and experience of "financial scientists and chartists."[3] The ads also promised "free" material to new subscribers and offered the use of "timing devices for maximum trading profits" without disclosing the risks and limitations of such devices. Not only did the references in the ads to "free" materials and "timing devices" violate specific Commission rules,[4] but the Commission could properly conclude that the entire content and tone of the advertisements was designed to whet the appetite of the unsophisticated. Marketlines objects to the evaluation of its ads by the Commission under the "unsophisticated investor" test but the Commission's duty to protect the gullible is apparent.[5] And, we have held that it is not improper to judge advertisements by their impact on the segment of the public at which they are aimed, Ward Laboratories, Inc. v. F. T. C., 276 F.2d 952 (2d Cir. 1960), cert. denied, 364 U.S. 827, 81 S.Ct. 65, 5 L.Ed.2d 55 (1960).

■■ In connection with the appropriate amendment of its registration application, Marketlines argues that its delay was not "willful" since it was filed within 3 months of Schreiber's status change, and the Commission's Rules do not provide any specific time limitation. But, the response to this is that in addition to Marketlines' amendment not being filed "promptly," it was misleading; an amendment filed January 21, 1965 merely indicated that Schreiber was no longer an officer of the firm but concealed until March 24, 1965, when an additional amendment was filed following prodding by the Commission staff,

1. 15 U.S.C. § 80b–1 et seq.

2. Market Values, Inc., C.C.H.Fed.Sec.L. Rep. ¶77,185 (1964).

3. In this connection we note that Romanoff, who was the principal provider of editorial comment, failed to pass an examination as an investment adviser in Illinois and Marketlines was prohibited from acting as an adviser in that state. See Marketlines, Inc. v. Chamberlain, 63 Ill.App.2d 274, 211 N.E.2d 399 (1965).

4. See Rules 206(4)–1(a) (3) and 1(a) (4), 17 CFR 275.206(4)–1(a) (3) and 1(a) (4).

5. Marketlines argues that it was unfairly surprised by the Commission's position since almost all of the challenged advertisements appeared before the Commission's decision in Spear and Staff, C.C.H. Fed.Sec.L.Rep. ¶77,216 (March 25, 1965), which it says was the first decision giving notice as to what would be considered improper investment advisory material. But the Commission's position had been made clear well before Marketlines committed its violations in a report of a Special Study of Securities Markets it submitted to Congress on April 3, 1963. See H.Doc. No. 95, Pt. 1, 88th Cong., 1st Sess., pp. 367–69, 381–83 (discussing the Spear & Staff violations which took place in 1961).

that he had not terminated his association as an employee. Moreover, there was never any disclosure that Stanley Chandler, a part time employee, also had been implicated in other Commission proceedings.[6] The registration and disclosure provisions are crucial to the operation of the Act and we cannot condone their blatant abuse. In sum, we find that the Commission's findings are supported by substantial evidence; we therefore are not free to reach different conclusions of our own. Consolo v. Federal Maritime Commission, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

Revocation is, of course, a severe sanction, but the Commission could reasonably find that in the circumstances present here it was necessary to protect the investing public. We are not free to examine the appropriateness of action taken by the Commission as if it were before us in the first instance. In charging the Commission with the enforcement of the Act "in the public interest," Congress necessarily gave it a broad discretion. Cf. Berko v. S. E. C., 316 F.2d 137 (2d Cir. 1963); 2 Loss, Securities Regulation 1323 (2d ed. 1961). Marketlines contends, however, that in determining the public interest the Commission considered improper evidence. But the fact that Romanoff failed to pass an examination to qualify as an investment adviser in Illinois and in 1950 was found guilty of various serious crimes and was disbarred in New York, is quite relevant to a determination as to whether it is in the public interest for him to continue as an investment adviser—an occupation which can cause havoc unless engaged in by those with appropriate background and standards. Nothing in the Act prohibits the Commission from considering such evidence. Petitioner's remaining contentions are devoid of merit.

The order is affirmed.

6. Romanoff testified that he was unaware of Chandler's status. But the Commission could reasonably reject this explanation. Chandler was a part time employee of Marketlines and, in addition, was the sole employee of another company owned by Romanoff which shared Marketlines' offices, and had been implicated in the same proceedings as Schreiber.