Dennis WALSINGHAM, on his behalf and on behalf of all others similarly situated, Plaintiff,

v.

BIOCONTROL TECHNOLOGY, INC., Diasense, Inc., David L. Purdy, Fred E. Cooper, and Glen Keeling, Defendants.

Civil Action No. 96–809.

United States District Court, W.D. Pennsylvania.

Dec. 1, 1998.

Richard A. Finberg, Peter C. Butcher, Malakoff, Doyle & Finberg, Pittsburgh, PA, Joseph H. Weiss, Weiss & Yourman, New York City, for Plaintiffs.

C. Richter Taylor, John K. Baillie, Houston Harbaugh, Pittsburgh, PA, for Defendants.

## MEMORANDUM OPINION

CINDRICH, District Judge.

This class action lawsuit arises from alleged violations of federal securities laws. The plaintiff filed a two count complaint asserting the following claims: Count One, violation of Section 10(b) of the Securities Exchange Act (the "Exchange Act"), 15 U.S.C. Section 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. Section 240.10b–5, against all defendants; and Count Two, violation of Section 20(a) of the Exchange Act, 15 U.S.C. Section 78t(a), against defendants Biocontrol Technology, Inc., David L. Purdy, and Fred E. Cooper. Pending before the court is the defendants' Motion To Dismiss Pursuant To Fed. R.Civ.P. 9(b) and 12(b)(6).[1]

## I. Background[2]

The plaintiff brought this action as a class action pursuant to Fed.R.Civ.P. 23, on behalf of a class of purchasers of the common stock of defendant Biocontrol Technology, Inc. ("BICO"), to recover damages arising from the defendants' alleged violations of Sections 10(b) and 20(a) of the Exchange Act. The court entered an order on March 14, 1997, certifying the action as a class action on behalf of all persons who purchased the common stock of BICO during the period between April 25, 1995 and February 26, 1996.[3]

BICO is a Pennsylvania corporation engaged in the development and manufacture of biomedical devices and environmental products. BICO has approximately 37 million shares of issued and outstanding stock which trades on the NASDAQ Exchange. BICO, together with defendant Diasense, Inc. ("Diasense"), a Pennsylvania corporation and 52% owned subsidiary of BICO, is one of a group of companies engaged in the development of a biomedical testing device for the non-invasive monitoring of glucose levels in the blood of people with diabetes. Defendant David L. Purdy ("Purdy") is the President, Chairman of the Board, and Treasurer of BICO and an officer and director of Diasense. Defendant Fred E. Cooper ("Cooper") is the Chief Executive Officer, Executive Vice President, and a director of BICO and a director of Diasense. Defendant Glenn Keeling ("Keeling") is the Vice President of Marketing and a director of BICO.

BICO claims that its device, the Diasensor 1000 Noninvasive Glucose Sensor (the "Diasensor 1000"), eliminates the pain and inconvenience associated with traditional testing methods. The Diasensor 1000 allegedly allows diabetics to test themselves by passing infrared light beams through the forearm which detects the level of glucose and passes that information to a computer for comparison with a patient profile. Diasense is the owner and marketer of the Diasensor 1000, while BICO

1. The defendants also moved for damages pursuant to Fed.R.Civ.P. 11 as part of its motion. In a memorandum order dated March 31, 1997, the court denied this part of the motion. Pursuant to the parties' request, the court stayed ruling on the motion to dismiss pending further proceedings before the Food and Drug Administration ("FDA"). In a recent status conference, the parties requested a lifting of the stay and decision on the motion to dismiss as the initial phase of FDA proceedings had concluded.

2. As noted in the following discussion, we must take all of the well-pleaded factual allegations in the complaint as true and construe them in a light most favorable to the plaintiff for purposes of a motion to dismiss. Accordingly, the factual assertions which appear in the Background section and other portions of the memorandum opinion assumes the factual accuracy of the allegations in the complaint for purposes of this motion only. We will in large part, therefore, dispense with qualifying terms such as "allegedly." No statement contained in this opinion, however, should be considered as a factual finding by the court.

3. The *Walsingham* suit at Civil Action No. 96–809 was designated the lead case and consolidated with six other suits at Civil Action Nos. 96–918, 96–919, 96–1068, 96–1419, 96–1425, and 96–1678. References to the complaint are to the *Walsingham* complaint at Civil Action No. 96–809, unless otherwise noted.

has the exclusive manufacturing rights to the product.

BICO began developing the Diasensor 1000 about a decade ago and on January 6, 1994 the company filed a 510(k) Notification with the FDA. A 501(k) Notification is an application for FDA approval which seeks to obtain approval by establishing that the device to be marketed is substantially equivalent to a legally marketed device that was, or is, currently on the U.S. market (a "predicate"). The FDA's Division of Clinical Laboratory Devices accepted BICO's 510(k) application for review by its Clinical Chemistry/Toxicology branch. BICO has not, however, received FDA clearance for the Diasensor 1000.

The Diasensor 1000 is essentially BICO's only product. Accordingly, BICO has suffered substantial losses and is unable to generate revenue to finance its operations, including development and testing costs for the Diasensor 1000. Thus, BICO sells stock to finance its existence, including the payment of executive salaries which rank among the highest in their class.

The plaintiff alleges that the defendants knowingly created a false impression that BICO was ready to begin the marketing phase of the Diasensor 1000 and was poised to capture the market for non-invasive glucose testing. Citing to numerous examples, the plaintiff contends that throughout the class period the defendants issued misleading press releases and made misleading public statements touting the Diasensor 1000's effectiveness and reliability and projecting its imminent approval by the FDA. The defendants allegedly made such representations even though BICO had not conducted the necessary testing to obtain FDA approval.

The plaintiff contends that the defendants' alleged misrepresentations had the effect of inflating BICO's stock until the lack of testing and poor test results of the Diasensor 1000 were revealed in a public hearing before an FDA panel on February 26, 1996. As a result, BICO shares fell 41%.

## II. *Analysis*

### A. *Motion to Dismiss Pursuant To Fed.R.Civ.P. 9(b)*

The defendants argue that the complaint should be dismissed for failing to meet the pleading requirements of Fed.R.Civ.P. 9(b) and Section 21D(b) of the Exchange Act, 15 U.S.C. Section 78u–4(b)(1) and (2).

 Section 10(b) claims sound in fraud, thus, the allegations of fraud must be stated with particularity pursuant to Fed.R.Civ.P. 9(b). *In re Westinghouse Securities Litigation,* 90 F.3d 696, 710 (3d Cir.1996) (citation omitted). "Rule 9(b) requires a plaintiff to plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage." *Id.* (citation and quotation omitted).

A plaintiff must also satisfy the heightened pleading requirements of Section 21D(b) of the Exchange Act, which provides at 15 U.S.C. Section 78u–4(b)(1) that:

> In any private action arising under this chapter in which the plaintiff alleges that the defendant -
>
> (A) made an untrue statement of a material fact; or
>
> (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

Moreover, 15 U.S.C. Section 78u–4(b)(2) provides that "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind, [i.e., scienter]."

■ First, the complaint meets the requirements of Section 78u–4(b)(1). The complaint lists a multitude of alleged fraudulent statements identifying the speaker, the time of the statement and the substance of each statement. Each statement or omission, is also accompanied by a brief explanation of why the plaintiff believes it to have been false or misleading, and an allegation that it was material.

■ As to Section 78u–4(b)(2), the Third Circuit has not specifically spoken on this section's more rigorous pleading requirements for scienter. A thorough and well-reasoned opinion on Section 78u–4(b)(2)'s history and application, however, can be found in *Rehm v. Eagle Finance Corp.*, 954 F.Supp. 1246 (N.D.Ill.1997). After a thoughtful analysis of Section 78u–4(b)(2)'s legislative history, the court concluded that Congress intended to adopt a pleading standard similar to that employed by the Second Circuit in cases like *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir.1994).[4] *Rehm*, 954 F.Supp. at 1252–53.

"Under the Second Circuit standard, the requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Rehm*, 954 F.Supp. at 1253 (citing *Shields*, 25 F.3d at 1128). We, like Judge Moran, find that Congress intended to adopt this pleading standard when enacting Section 78u–4(b)(2).[5]

■ As applied to the instant case, we find that the complaint satisfies part (b) of the test as the plaintiff alleges facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. First, the complaint references numerous public representations and omissions by the defendants during the class period. The complaint also alleges that the defendants had knowledge of, and access to, information regarding flawed testing and test results which materially impacted FDA approval. The complaint further alleges that the defendants withheld the information and explains why such concealment made the defendants' various public statements misleading. Although the plaintiff will eventually be required to support his allegations with evidence, after having had an opportunity to engage in discovery, the complaint satisfies Section 78u–4(b)(2)'s pleading requirements for scienter.[6]

In sum, we find that the plaintiff identified the speaker, the time, and the content of each alleged fraudulent misrepresenta-

**4.** The Senate Banking, Housing, and Urban Affairs Committee stated that although it was adopting the Second Circuit standard, it did not intend to codify the Second Circuit's case law interpreting the standard. *Rehm*, 954 F.Supp. at 1252. The Committee noted, however, that courts may find the Second Circuit's case law instructive. *Id.*

**5.** Although it has never specifically addressed the issue, the Third Circuit has followed the Second Circuit standard. In *Weiner v. The Quaker Oats Co.*, 129 F.3d 310, 318 n. 8 (3d Cir.1997), for example, the Court cited to the Second Circuit case *In re Time Warner Inc. Securities Litigation*, 9 F.3d 259 (2d Cir.1993) and concluded that scienter "may be ade-

quately alleged by setting forth facts establishing a motive and an opportunity to commit fraud, or by setting forth facts that constitute circumstantial evidence of either reckless or conscious behavior." Absent from the opinion, however, is any reference to Section 78u–4(b)(2), even though *Wiener* was decided well after the 1995 enactment of Section 78u–4(b)(2). Although the reason for Section 78u–4(b)(2)'s absence is unclear, what is clear is that the Third Circuit has applied the Second Circuit standard.

**6.** Because we find that the complaint satisfies the conscious misbehavior or recklessness part of the test, we need not consider motive and opportunity.

tion and what harm was suffered as a consequence of the alleged fraud. These averments are sufficiently particular for the defendants to frame a response. Moreover, the plaintiff has satisfied the pleading requirements of Section 78u–4(b)(1) and (2). Accordingly, the defendants' motion to dismiss pursuant to Fed. R.Civ.P. 9(b) will be denied.

### B. *Motion to Dismiss Pursuant To Fed.R.Civ.P. 12(b)(6)*

The defendants argue that the plaintiff failed to plead certain requisite elements of either a Section 10(b) or Section 20(a) action.

#### 1) *Standard of Decision*

■ In deciding a Rule 12(b)(6) motion, we accept all well pleaded facts as true and draw all inferences in favor of the non-moving party. We focus on the pleadings in addressing the motion, but we may also consider matters of public record, orders, exhibits attached to the complaint, and items appearing in the record of the case. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384–85 and n. 2 (3d Cir.1994). A Rule 12(b)(6) motion must be denied unless the non-moving party can prove no set of facts that would entitle him or her to relief. *City of Philadelphia v. Lead Industries Ass'n, Inc.,* 994 F.2d 112, 118 (3d Cir.1993). Even a defective complaint will not be dismissed unless it appears to a certainty that the defect in the complaint cannot be cured by amendment. *See, e.g., Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

#### 2) *Section 10(b), Rule 10b–5 Claims*

■ "To state a securities fraud claim under section 10(b) and rule 10b–5, a private plaintiff must plead the following elements: (1) that the defendant made a misrepresentation or omission of (2) a material (3) fact; (4) that the defendant acted with knowledge or recklessness and (5) that the plaintiff reasonably relied on the misrepresentation or omission and (6) consequently suffered damage." *Westinghouse,* 90 F.3d at 710 (citation omitted). The defendants challenges the plaintiff's pleading on several of these requisite elements.

#### a) *Misrepresentation or Omission*

■ The defendants contend that the complaint is replete with allegations which are not false and therefore cannot form the bases for the instant action. We disagree.

■ The defendants take the approach of dissecting several individual alleged misrepresentations in the complaint and arguing the literal truth of each. In the context of a Section 10(b) action, however, we must consider all of the allegations of the complaint in the aggregate. *See Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 189–90 (5th Cir.1988); *SEC v. C.R. Richmond & Co.,* 565 F.2d 1101, 1106–07 (9th Cir.1977). The plaintiff alleges in the instant case that the defendants issued misleading press releases touting the Diasensor 1000's effectiveness and reliability and projecting its imminent approval by the FDA even though BICO's own testing revealed that the Diasensor 1000 was neither effective, reliable, nor marketable.[7] *See* Compl. at para. 29. Thus, al-

---

7. For example, on December 6, 1995, BICO issued a statement in response to a recent newspaper article reporting skepticism as to whether the Diasensor 1000 would be approved by the FDA. BICO stated:

> If the device does not work, why struggle so hard to get it to market? Why struggle so hard and long through the FDA approval process and why would eight of the world's leading endocrinologists have gone to the

FDA to support the Diasensor 1000(TM) and urge its approval? The Company will not survive if a product that doesn't work is supplied. Biocontrol will maintain the strictest standards with the Diasensor 1000(TM) noninvasive glucose sensor and will certainly stand behind the product. The welfare of the diabetic is of the utmost importance.

though several of the statements may not have been literally false when considered in a vacuum, they could be misleading when considered in context of the alleged omissions. *See Kaplan v. Rose,* 49 F.3d 1363, 1375–80 (9th Cir.1994)(defendants failed to disclose known disappointing trial results while releasing positive statements regarding product).

#### b) Fact

The defendants cite to several statements set forth in the Complaint which they claim are indirect quotations by third parties in the news media over which they had no control. The defendants argue that these statements are not actionable under Section 10(b) because only direct statements by a defendant are actionable.

We disagree with the defendants' characterization of these statements. The majority of the statements identified by the defendants contain what purports to be a direct quote of a specifically named BICO official. The remaining statements and references provide necessary background information. The defendants will later have an opportunity to challenge the accuracy and admissibility of these statements.

#### c) Materiality

■■■ The defendants argue that the alleged omissions in the instant case, i.e., BICO's failure to publicly disclose its test results or disclose the details of its correspondence with the FDA, are not material.

■■■■■■ A misrepresentation is material if the misstated or omitted fact would

likely by viewed by a reasonable investor as significantly altering the total mix of available information. *Shapiro v. UJB Financial Corp.,* 964 F.2d 272, 281 n. 11 (3d Cir.1992). Materiality is a mixed question of law and fact ordinarily decided by the trier of fact. *Id.* "Only if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality is it appropriate for the district court to rule that the allegations are inactionable as a matter of law." *Id.* (citing *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)).

First, the defendants contend that any failure to disclose the test results and/or the details of correspondence with the FDA cannot support the plaintiff's claims because they were under no obligation to make such disclosures. We disagree.

The Diasensor 1000 is essentially BICO's only product and it could be placed in the market only after FDA approval. Omissions of the product's allegedly poor test results would likely be viewed by a reasonable investor as significantly altering the total mix of available information, as positive test results were necessary to secure FDA approval. Without such approval, BICO could not market its only product. We think it also significant that the defendants' failure to disclose the test results occurred during a time when they were issuing what can only be described as very positive press releases, one of which

---

Compl. at para. 50. The plaintiff alleges that at the time of this and other such positive representations, BICO's test results were dismal. More specifically, the plaintiff alleges that

>BICO initially evaluated 85 patients, it excluded 22 of these from the analysis, however, because of machine malfunctions. It excluded an additional 16 patients because the machines could not be calibrated to the patient's physiology (making it impossible to obtain an accurate blood-glucose reading) and while this left 47 patients, BICO used only a subgroup of 23 patients for its testing at [ ] three sites over a

month period.... BICO considered the device 'successful' if, with the patient doing the readings, the Diasensor device produced readings which more than *50% of the time* agreed, within 20%, with the readings from the patient's own invasive device. Notwithstanding the flawed nature of the testing, only 8 of the 23 patients monitored using the Diasensor device obtained results which BICO deemed to be 'successful' when compared to conventional test methods. The Diasensor 1000 misread glucose levels so often that it could endanger patients.

Compl. at para. 29.

was in response to public criticism of the Diasensor 1000's effectiveness. *See, e.g., Kaplan,* 49 F.3d at 1374 ("Although a prospectus should not bury the shareholders in an avalanche of trivial information, [the study results were] not trivial, as the efficacy and competitiveness of Medstone's system was essential to the company's performance." (citations and quotations omitted)).

Next, the defendants argue that the various press releases, statements, and omissions cited in the Complaint are not material in light of the "bespeaks caution" doctrine and the safe harbor provisions of the recently enacted Private Securities Litigation Reform Act of 1995 (the "Reform Act"), which amends the Exchange Act, 15 U.S.C. Section 78u–5(c).

■ The " 'bespeaks caution [doctrine] is essentially shorthand for the well-established principle that a statement or omission must be considered in context, so that accompanying statements may render it immaterial as a matter of law.' " *Westinghouse,* 90 F.3d at 707 (quoting *In re Donald J. Trump Casino Securities Litigation,* 7 F.3d 357, 364 (3d Cir.1993). In *Westinghouse,* the Third Circuit described the doctrine as follows:

> The application of bespeaks caution depends on the specific text of the offering document or other communication at issue, i.e., courts must assess the communication on a case-by-case basis. Nevertheless, we can state as a general matter that, when an offering document's forecasts, opinions or projections are accompanied by meaningful cautionary statements, the forward-looking statements will not form the basis for a securities fraud claim if those statements did not affect the "total mix" of information the document provided investors. In other words, cautionary language, if sufficient, renders the alleged omissions or misrepresentations immaterial as a matter of law.
>
> ... Of course, a vague or blanket (boilerplate) disclaimer which merely warns the reader that the investment has risks will ordinarily be inadequate to prevent misinformation. To suffice, the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions in the prospectus which the plaintiffs challenge.

90 F.3d at 707 (quoting *Trump,* 7 F.3d at 364).

■ The safe harbor provisions of the Reform Act are similar to the judicially created bespeaks caution doctrine, in that the safe harbor provisions insulate a defendant from private securities liability for forward-looking statements if the forward-looking statement is identified as such and "is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statements." 15 U.S.C. Section 78u–5(c)(1)(A)(i). The safe harbor provisions also insulate a defendant from liability in the absence of accompanying cautionary statements, however, if (1) the plaintiff cannot show that the forward-looking statements were made by or with the approval of an executive officer of the defendant who had actual knowledge that the statement or omission was false or misleading, 15 U.S.C. Section 78u–5(c)(1)(B); or (2) if the forward-looking statements are immaterial to the plaintiff's claims, 15 U.S.C. Section 78u–5(c)(1)(A)(ii).

■ Neither the bespeaks caution doctrine nor the safe harbor provisions of the Reform Act insulates a defendant from liability, however, when a statement misrepresents a historical or current fact. *See Westinghouse,* 90 F.3d at 710 (" 'To warn that the untoward may occur when the event is contingent is prudent; to caution that it is only possible for the unfavorable events to happen with they have already occurred is deceit." (quoting *Rubinstein v. Collins,* 20 F.3d 160, 171 (5th Cir.1994)); *Shaw v. Digital Equipment Corp.,* 82 F.3d 1194, 1213 (1st Cir.1996) ("To the extent

that plaintiffs allege that the ... statement encompasses the latter representation of *present fact*, and that such representation was false or misleading when made, the surrounding cautionary language could not have rendered the statement immaterial as a matter of law.").

The defendants contend that the statements cited in the Complaint were accompanied by adequate cautionary language which rendered any misstatement contained therein immaterial by the bespeaks caution doctrine and/or the safe harbor provisions of the Reform Act. The plaintiff's claims, however, are based upon an allegation of misrepresented historical or current facts. The plaintiff alleges, for example, that at the time the defendants' made the statements set forth in the Complaint, each defendant already knew of the inadequate test results but concealed such information from the public. Compl. at paras. 33 and 70. Thus, the statements are not rendered immaterial by either the bespeaks caution doctrine or the safe harbor provisions.[8]

#### d) Reliance

■ The plaintiff alleges that class members suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for BICO common stock. The plaintiff contends that class members would not have purchased BICO stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' false and misleading statements, i.e. the defendants' fraud on the market.

The defendants argue that the plaintiff's claims must be dismissed because there was publicly available information that would have corrected any misrepresentations. Thus, the defendants contend,

BICO did not, and could not have, perpetuated a fraud on the market.

■ "Under the fraud on the market theory, the plaintiff has the benefit of a presumption that he has indirectly relied on [an] alleged misstatement, by relying on the integrity of the stock price established by the market." *Kaplan*, 49 F.3d at 1376 (quoting *In re Apple Computer Securities Litigation*, 886 F.2d 1109, 1113–14 (9th Cir.1989)). However, if "the information that defendants are alleged to have withheld from or misrepresented to the market has entered the market through other channels, the market will not have been misled, and the stock price will reflect the full universe of information, despite the defendants' misrepresentations." *Id.* (quoting *Apple*, 886 F.2d at 1114). Any withheld or misrepresented information "must be transmitted to the public with a degree of intensity and credibility sufficient to effectively counterbalance any misleading impression created by the [defendants] one-sided representations." *Id.* (quoting *Apple*, 886 F.2d at 1116).

■ Section 10(b) and Rule 10b–5 claims based on the fraud on the market theory are generally fact specific, and therefore, are usually left to the trier of fact. *See Basic, Inc. v. Levinson*, 485 U.S. 224, 239–41, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). As previously noted, the instant complaint cites to numerous statements allegedly made by the defendants which tout the Diasensor 1000's effectiveness and express repeated optimism as to FDA approval while BICO's own test results revealed that the device does not work. Indeed, some of these statements were allegedly made in direct response to public skepticism regarding the device's effectiveness and potential for FDA approval. Although there was publicly available information which warned of

---

**8.** As has already been indicated, the plaintiff alleges that the defendants issued the various press releases and statements with knowledge of the inadequate test results. Furthermore, we have concluded that the alleged state-

ments and omissions would be material to a reasonable investor. Therefore, even in the absence of any cautionary language, the remaining safe harbor provisions do not insulate the defendants from liability.

investment risks, we cannot conclude at this stage of the litigation that such information effectively counterbalanced the defendants' alleged misrepresentations and omissions.

In sum, the plaintiff has sufficiently pled all of the requisite elements of a Section 10(b), Rule 10b–5 claim. Accordingly, the defendants' motion to dismiss Count One of the Complaint will be denied.

### 3) Section 20(a) Claims

Defendants Cooper and Purdy contend that summary judgment should be granted as to the Section 20(a) claim against them at Count Two because (1) there are no viable Section 10(b) claims at Count One and (2) the complaint fails to plead that either Cooper or Purdy culpably participated in any fraud.

■ "Section 20(a) imposes joint and several liability on any person who 'controls a person liable under any provision of' the Securities Exchange Act of 1934. *Shapiro*, 964 F.2d at 279. Section 20(a)'s text plainly requires the plaintiff to prove not only that one person controlled another person, but also that the 'controlled person' is liable under the Act." *Id.* (citation omitted).

■ "Although Section 20(a) does not define 'control,' it is clear that the evidence in each case must be examined to determine to what extent the controlling person was involved in the fraudulent scheme." *Rochez Brothers, Inc. v. Rhoades*, 527 F.2d 880, 884 (3d Cir.1975). Such an inquiry is necessary as "Congress intended [Section 20(a)] liability to be based on something besides control. That something is culpable participation." *Id.* at 884–85.

As to Cooper's and Purdy's first argument, they are correct in that a Section 20(a) claim is dependant upon a viable 10(b) claim. We have already concluded, however, that the plaintiff's section 10(b) claims are viable.

■ Cooper's and Purdy's second argument also fails. The Complaint cites to numerous BICO press releases which were allegedly misleading in light of the Diasensor 1000's poor test results. The Complaint specifically charges that the "individual defendants knew at all relevant times that the tests were patently inadequate to survive FDA scrutiny" and that such defendants "concealed that information from the investing public." Compl. at para. 33. The Complaint further charges that: "Each of the defendants: (a) knew or had access to the material adverse non-public information about the effectiveness and reliability of the Diasensor 1000 and (b) participated in drafting, reviewing and/or approving the misleading statements, releases, reports and other public representations of and about BICO." Compl. at para. 70. We find that these assertions, each of which are incorporated and realleged at Count Two of the Complaint, see Compl. at para. 74, sufficiently allege culpable participation by Cooper and Purdy.

Accordingly, Cooper's and Purdy's motion to dismiss Count Two of the complaint will be denied.

An order consistent with this memorandum opinion will be entered.

### ORDER

**AND NOW** this 1 day of December, 1998, for the reasons stated in the accompanying memorandum opinion, **IT IS HEREBY ORDERED** that the defendants' Motion To Dismiss Pursuant To Fed. R. Civ. P. 9(b) and 12(b)(6) (Doc. No. 10) is **DENIED.**